[:Phillip-Andrew: El;]
[c/o: 3725 Country Club Drive, Unit #11]
[Long Beach, California Republic near [90807]]

Tel:  [(312) 961-4791]

Plaintiff in Propia Persona

**UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES (WESTERN DIVISION)**

CV10  8299 - CAS (PJWx)

| | |
|---|---|
| [. Phillip-Andrew: El;] ~~...~~ <br><br> Plaintiff, <br><br> V. <br><br> CITIMORTGAGE INC CR TITLE SERVICES INC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, OLYMPIC INVESTMENTS INC, DOES 1 through X, inclusive. <br>       Defendants <br> Defendants. | CASE NO: <br><br><br> TRIAL BY-JURY DEMANDED <br><br> Date: <br> Time: <br> Dept: |

**COMPLAINT FOR QUIET TITLE**

1



PAID

NOV 16 2010

Clerk, US District Court
C OURT 4612

## Background History and Pre-Filing Demands

1.) Plaintiff's assignor and grantor, [████████ CAROLYN SEELEY ████████], was served a Notice of Trust Sale on or around 27th of April 2010.

2.) Ms. Seeley rescinded the loan on or around 8th of July 2010, for failure of consideration and lack of full disclosure in accordance with California Civil Codes 1682, 1688, 1689, 1700, 1501, and 1505 and the Truth In Lending Act 12 C. F. R.   226.33 and 15 USC 1635(b). This rescission is within Ms. Seeley's right pursuant to statute.

3.) Defendants CITIMORTGAGE INC, CR TITLE SERVICES INC, and MERS were noticed and never responded to Ms. Seeley's rescission notices within the time limit regulated by the statute.

4.) Ms. Seeley also tendered payment to Defendants CITIMORTGAGE INC, on or around 8/02/2010.

5.) Ms. Seeley, after the default of the defendants CITIMORTGAGE INC, CR TITLE SERVICES INC, and MERS, transferred all interest in subject property on or around 8/02/2010. (See "Grant Deed to Trust", attached as **Exhibit G**)

6.) Defendants CR TITLE SERVICES INC, and MERS were also noticed of tender of payment.

7.) Defendants accepted tender of payment on or around 8/10/2010.  By accepting the tender and not returning the tender to Ms. Seeley, in accordance with California Commercial Code 3603 the alleged debt referenced in the certain deed of trust in which Defendant CR TITLE SERVICES INC based its power of sale on.

8.) Defendant MORTGAGE ELECTRONIC REGISTRATION SERVICES created fraud in the factum by assigning to Defendant CITIMORTGAGE INC and substituting the trustee from Fidelity National Title Company. New Trustee of Record Defendant CR TITLE SERVICES INC, as Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC lacks standing at law to assign or substitute any deeds of Trust.

9.) Grantor Carolyn Seeley, then had a complaint for Unlawful Detainer by Defendant OLYMPIC INVESTMENTS INC, on or around September 23rd, 2010.

2

10.) Ms. Seeley filed an answer, listing as an affirmative defense, lack of privity and Title of property was in dispute.

11.) None of these points were allowed to be heard in the summary hearing, including the facts that the defendant is not the record owner of the property, which is a direct violation of Ms. Seeley's Constitutional Right to due process of law.

12.) A judgment was granted in favor of the Unlawful Detainer Plaintiff, Defendant OLYMPIC INVESTMENTS INC, on or around October 29, 2010.

13.) Ms. Seeley, filed a notice of removal to Federal Court pursuant to 28 USC 1331 on or around 11/1/2010, along with a petition challenging the constitutionality of the Unlawful Detainer and judicial foreclosure codes of the State of California.

14.) Plaintiff and grantor Ms. Seeley contend that the summary judgment was entered in error, and that the property was properly transferred to Plaintiff and all judgments of inferior courts be voided because of fraud on the state court in attaining a judgment in favor of Defendant OLYMPIC INVESTMENTS INC, and the Unconstitutionality of California Civil code Sections 1611, and 2924-2924(f).

## PARTIES, JURISDICTION and LEGAL CONTENTIONS

1. Come now the Plaintiff [:Phiilip-Andrew:El;] as grantee, assignee of [:Phillip-Andrew: El;], with this complaint for Quiet Title, compliance of damage s inflicted by this slander of the Title and conspiracy to defraud committed by CITIMORTAGE INC, and by and through their so called, servicing agents, Trustees, Defendant CR TITLE SERVICES INC,

2. This Court has plenary jurisdiction over the present dispute and all parties pursuant to 28 USC 1331, in that the claims alleged there is a rise under the law of the United States, including but not limited to 42 USC Sections 1981, 1982, 1983, and 1988 (a).

3

**3.**   This court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine Plaintiffs state law claims because these claims are related to Plaintiff's federal claims and arise out of a common nucleus of related facts and legally interrelated transactions, and accordingly form part of the same legal case or controversy under Article III of the United States Constitution.

**4.**   Jurisdiction within this court specifically arise from 15 U.S.C. sections 1601 et seq. ("TILA"); Regulation Z, 12 C.F.R. Section 226 et seq., Federal Trade Commission Act (FTC Act"), and 15 U.S.C. section 1691, as well as Civil Rights Jurisdiction 28 U.S.C. Section 1343, 42 U.S.C. Section 1981,1982,1983,1988(a) 12101 et seq.

**5.**   Defendant CITIMORTGAGE INC, N.A. is so because they are the bank claiming an interest as the original lender's (ABN AMRO MORTGAGE GROUP INC) "assignee" and beneficiary of an unnamed and undisclosed trust or agency or nomination granted to CR TITLE SERVICES INC, a wholly owned subsidiary of California based company

**6.**   CITIMORTGAGE INC, N.A., World head quarters is based in O'Fallon, Missouri (specifically Technology Drive MS 140 O'Fallon MO 63368) and Defendant CR TITLE SERVICES INC is also headquartered in O'Fallon MO (specifically 1000 Technology Drive MS 314 O'Fallon Mo 63368) CR TITLE SERVICES INC, is wholly owed and /or controlled subsidiary of CITIMORTGAGE INC,

**7.**   The Court has jurisdiction over Plaintiff's action for declaratory relief pursuant to 28U.S.C. Section 2201 and rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. Section 2203 and

**8.**   Plaintiff now and accordingly assert seven causes of action against the Defendants CITIMORTGAGE INC, CR TITLE SERVICES and MERS

4

predicated on, inter alia, purported violations of the federal Fair Debt Collections Act ("FDCA"), 15 U.S.C. Section1601 et seq.  ("TILA");

Regulation Z, 12 C.F.R. Section 226 et seq., Federal Trade Commission Act (FTC Act"), and 15 U.S.C. section 1691, as well as Civil Rights Jurisdiction 28 U.S.C. Section 1343, 42 U.S.C. Section 1981,1982,1983,1988(a)

**9.** Plaintiff also asserts derivative claims under California Fair Debt Collection Practices Act, Ca.  Civil Code Section 1788(c) and (f) among others.

**10.**  In addition, this Court has jurisdiction pursuant to 28 U.S.C. Section 1343 (Civil Rights) insofar as Plaintiff seeks a declaratory judgment or series of three declaratory judgments pursuant to 42 U.S.C. Section 1981,1982,1983,and 1988(a), that California Civil Code Section 2924-2924i are and ought to be declared null and void as unconstitutional impairments on the right an obligations of contract, and as such as violations of 42 U.S.C. Section 1981 and 1982 in particular, actionable under 42 U.S.C. Section 1983 and 1988(a).

**11.**    California Civil Code Sections 2924-2924i providing "exhaustive" procedure for non-judicial foreclosure), are unconstitutional both on their face and as applied, in that the Courts of California are administering, and permitting private attorneys and trustees to administer and exercise the business of non-judicial foreclosure in such  a way that the common law rights to limit collection and enforcement to "holders in due course" and other privileges inherent in the common law doctrine of "privity of contract" have been all but obliterated.

**12.**      Courts in California seem particularly anxious to gloss over the "holder in due course" and privity of contract" doctrines in

5

non-judicial foreclosure, accepting (as U.S. District Judge Lawrence J. O'Neil did as recently as December 1, 2008) defendant servicer contentions (without any supporting law, precedent, or other authority whatsoever) such as "Defendant fault the complaint's allegation to produce originals of either the promissory note or deed of trust." ***Vargas v. Cal-Western Reconveyance Co., 2008*** U.S. Dist. LEXIS 100115 (E.D.CA. 2008).

13.  This Court must now decide whether it is an unconstitutional impairment of the common law right of contract for the California legislature and courts to nullify the common law obligation of lenders operating under the Federal Reserve system of credit and loan origination (rather than the actual lending of money owned by a "lender"), *to hold, keep, and produce the original note and to limit* enforcement of a contract to the actual parties or direct agents or assignee of a contract in a simple and direct chain of title.

14.  These principal elements of contract law have always been a key requirement of the common law of contract, and this requirement is enshrined by statute in some states such as Florida Statutes Sections 673.3021, although even in Florida the excuses by which lost notes are re-established under Florida Statute Sections 673.3091 are often no more than ridiculous "the dog ate my homework"-type explanations.

15.  The abrogation of the common law rights and obligations of contract by California statute and judicial practice is leading down a slippery slope to the abolitions of private property and its replacement by an unstable society filled with transient and rootless homeless people dependent on the government for housing as a form of welfare.

16.  The dream of home ownership and a stable homestead has given

way to a modern socialist American ideal of adult life, Peter Pan-like, the mobile life of the young vagabond college student who flop in one rat infested hovel the next after moving from a jointly held suburban apartment complex rented with friends the year before that.

**17.**   Plaintiff charged that the current mortgage foreclosure and economic crisis has in part been promote by the government as a matter of national policy to destroy or destabilize families and their residence patterns.

**18.**   The effective abandonment of the common law by the executive and judicial branches did not come about as the result of overt democratically enacted legislative modification of the law, nor pursuant to any official government policy of or for the public benefit, but to enable and enrich a favored group which has profited from a non-governmental financial innovation of the late 1970's-80's known as "securitization of debt", with securitized and **bundled " debt" sold on the open market in complete disregard** and, in fact, in flagrant violation of all common law (and Uniform Commercial Code) principles of "holder in due course" or " privity of contract".

**19.**   "Holder in due course" and "privity of contract" were key elements of common law jurisprudence specifically protected from interference by the state government under Article I, Sections 10, Cl. 1 of the United States Constitution, except where necessary to protect or advance a compelling governmental interest in the state's interest of self-protection or emergency exercise of the police power.  Cf., e.g., **Allied Structural Steel Co.  v.  Spannaus, Attorney General Of Minnesota et al.,** 438 U.S. 234; 98 S.  Ct. 2716; 57 L.  Ed. 2d 727 (1978).

**20.**  Plaintiff reserves the right to amend and add additional causes of

7

action to this complaint by regular amendment pursuant to Rule 15 of the Federal Rules of Civil Procedure as may be necessary to bring all issues before the Court concerning the properties for which quiet title is sought in California.

**21.**   Venue is proper pursuant to 42 U.S.C. Sections 139 (a)-(c) in the Centric District of California in that the property at 6231 Drexel Avenue Los Angeles California 90048, owed and subject to this dispute is located in Los Angeles County, which is included in the Western Division of the Central District of California.

**22.** Furthermore, Although Defendant CR TITLE SERVICES INC, gives its physical address for delivery of mail as 1000 Technology Drive MS 314 O'Fallon Mo 63368, they routinely operate throughout the States of California, being responsible for "servicing" a large number of non-judicial foreclosures pursuant to the statutes herein challenged as illegal, namely California Civil Code Sections 2924-2924i.

## **_BACKGROUND &THEORY OF THE CASE_**

**23.**   Assignor Carolyn Seeley signed her original note regarding the subject property on November 21, 2006 in favor of ABN AMRO MORTGAGE GROUP INC, which was subsequently sold to Defendant CITIMORTGAGE INC, N.A who bought all the assets of ABN AMRO MORTGAGE GROUP INC.

**24.**   Plaintiff [:Phillip-Andrew: El;] accepted assignment of Carolyn Seeley's title to the property in question (a community estate) subject to a

conditional obligation to pay the mortgage to which this property was subject if she could verify that the servicing entities were actually

8

"holders of due course" of their note, or that they were somehow or otherwise parties in privity with ABN AMRO MORTGAGE GROUP INC, (the original lenders) she received a property through ('Deed of Trust" attached as **Exhibit A**).

25.     Throughout 2010 the original debtor, Carolyn Seeley talked to agents & modification specialists who were supposedly working to remodify Carolyn Seeley's current mortgage, but the nearest result was a serious of letters regarding a "modification" which in fact was nothing more than an adjusted payment schedule which included all interest and penalties which Carolyn Seeley would have incurred under the original November 2006 note; the whole Proposal for modification was nothing but a scam, a device to push the Plaintiff's assignor further and further into apparent arrearage or default.

27.     Plaintiff [:Phillip-Andrew: El;] believes that the perpetual status of on going Negotiations were disingenuous, and meant to distract from Defendants' move to sell property as seen in the Notice of Default set for 4/27/2010 (see **Exhibit C**).

28.     Ms. Seeley had reasons to believe that CITIMORTGAGE INC was actively committing fraud outside of simply "leading them on" with regards to Loan Mods. Ms. Seeley had reasons to believe that CITIMORTGAGE INC, had a questionable assignation of title and may not be legally able to foreclose on Ms Seeley.

29.     Plaintiff [:Phillip-Andrew: El;], after carefully studying assignors loan documents alleged that the contract of trust/agency/ or nomination between CITIMORTGAGE INC, and CR TITLE SERVICES INC provides that CR TITLE SERVICES must pay CITIMORTGAGE INC regardless whether or

9

not CR TITLE SERVICES receives any money from "serviced" alleged debtor/de facto promissory/allegedly de jure obligors such as the Plaintiff, and that the CITIMORTGAGE INC, is entitled, under this same contract, to receive payments even after it has been sold and securitized (i.e. transferred both legal title and beneficial interest of the plaintiff's notes to unknown third-party investors).

30.     Plaintiff further alleges that there is accordingly, no privity of contract between any of the parties to this lawsuit, and that the Defendants are engaged in fraud to the extent that they describe, " hold themselves out to be", or otherwise act as if they were "holders in due course" of the Plaintiff's notes.

31.     In a Notice of Default and Election to Sell Under Deed of Trust dated 4/27/2010 Defendant CR TITLE SERVICES noticed the Plaintiff's assignor Carolyn Seeley that a Trustee's sale would occur not sooner than 90 days from 4/28/2010. They provided no indicated or evidence that this non-judicial foreclosure was accompanied by any proof of claim against the property owned by the Plaintiff. A Notice of Sale was also recorded on 7/28/10.(see "Notice of Default" attached as **Exhibit C,** "Notice of Sale", attached as **Exhibit D**)

32.     Such a sale is legally defective under the letter of California Law, but, in violation of 42 U.S.C. Sections 1981 and 1982, but according to California Civil Code Sections 2924-2924i implemented as a matter of custom, practice, and policy having the force and effect of law California State Courts must uphold the validity of contracts without regards to privity, fraud, lack of interest, and every other defect, and allow foreclosure by non holders of the notes who neither represent true holder nor are otherwise privity with true holders, full sale and transfer of the title to and beneficial use of all notes having been previously transferred.

10

33. The Defendant in this case have not stated whether the note is lost, stolen, or sold, but the implication of the Defendants course of conduct is that the commercial paper which constitutes the fundamental media of exchange in the mortgage business: promissory notes, although required to be accepted as "Deposits in Cash" by 12 U.S.C. Section1831, are in fact utterly unimportant and worthless or at least irrelevant and unnecessary to establishing s debt collector's standing as either the holder in due course or his representative.

34. This slippery tale of the mysteriously lost or destroyed note, repeated thousands of times all over California, is entitled to no more credibility than those offered by truant schoolboys involving dogs who eat homework or great aunts who always die during finals or when term papers are due, but it is used successfully in perhaps 80-90% of all California Mortgage Foreclosures and accordingly in violation of the Uniform Commercial Code Sections 3-301, 3-309 which leads all of these lying Mortgage company to proceed to foreclose non-judicially , without right under the law.

35. All promissors (including CITIMORTGAGE INC) implicitly, if not explicitly, promised or affirmed that they would follow the common law, as well as statutory law, guaranteeing to each contracting party promises to comport themselves by conduct in full compliance with all the grantees and protections of common law, including but not limited to doctrines of "holders in due course" and "privity of contract" and these promises are lawful and constitutional, unlike the effects abrogation of these rights and obligations by the "liar's and swindler's statutory immunity" offered by California Civil Code Sections 2924-2924i.

## COUNTS I: CAL. CIVIL CODE SECTIONS 2924-2924i are UNCONSTITUTIONAL

36. As allowed by Rule 10(b)-(c) of the Federal Rules, Plaintiff realleges and incorporate paragraphs 1-25 above by reference as if fully copies and related herein below.

37. California civil Code Section 2924-2924-I can accurately be so called (a "liar's or swindler's statutory immunity") because it does

11

not alter the common law at all, but rather creates an irrebuttable presumption that the condition of the common law have been met merely by a recitation of the properly phrased claims to that effect, no matter how fraudulent the claim.

38. CITIMOTGAGE INC, acting in concert with other Banks and Services such as but not limited to CR TITLE SERVICES INC, is implementing the following customs, practices and policies having the force of law in California which effect a systematic deprivation of the fundamental constitutional rights of the Plaintiffs, and thousand of other plaintiffs whose identity is unknown:

39. Conducting a non-judicial foreclosure sales after a rescission serves to defraud the mortgagor (borrower) and operates in defeasance of the implied covenant of good faith and fair dealing;

40. Conducting a non-judicial foreclosure sales after a rescission serves is a conspiracy to collect an alleged debt through color of laws.

41. Initiating an eviction proceed in California Superior Court without a reasonable prior notice of the sale of the property, as the primary and preferred means of informing occupants/mortgagors or their assignees, of the existence of sales.

42. Imposing and conducting a system of judicial evictions in California Superior Courts after non-judicial foreclosures, all of which are "rigged", in the sense of outcomes predetermined in favor of evicting parties, in such a manner that title disputes concerning the right to foreclose or evict from properties has all but abolished; California stands alone in the Unties States of America in not giving disputes over title legal superiority and priority to disputes over possession, and in fact in all but obliterating the rights of parties to contest claims to title relating to the right to conduct a non-judicial foreclosure;

43. Imposing and conducting a system of judicial evictions in California Superior Courts after non-judicial foreclosures which interfere with and impair the common law and statutory obligations of contract in violation of the Constitution, and which denies certain classes of people, namely mortgagors, equal rights to

44. Inherit, purchase, sell, hold and convey real and personal property (within the meaning of 42 U.S.C. 1981(a)). and

45. To make and enforce contracts, to sue, be parties, give evidence,

12

and to the full and equal benefit of all laws and proceedings for the security of persons and property (within the meaning of 42 U.S.C. 1981 (a)).

46.  For the purposes of this complaint, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship (within the meaning of 42 U.S.C.1981(b);

47.  For purposes of this complaint, Plaintiff contends that 42 U.S.C. 1981, and 42 U.S.C. 1982 are the key federal civil rights statutes because they together outline and guarantee, federally secured and specified, equal civil rights in the making of contracts and ownership of property; Plaintiff submits that these statutes, regardless of their Reconstruction-era origins, should be considered as "color blind" under modern Supreme Court interpretations of civil rights so that equal rights to make and enforce contracts, to sue, be parties, and give evidence concerning the rights arising therefrom, including the right to own property, should be both applied and constructed as thought they did not contain the nearly identical phrase, "as is enjoyed by white citizens thereof;" Plaintiff submits and contends that the law must be applied in fact to guarantee civil rights in the making and enforcement of contracts and the ownership of property to all citizens, and not merely that non-white citizens may not be denied their civil rights "any more" than such rights are denied to white citizens, which is a possible construction of civil rights jurisprudence prior to 1989.

48.  Plaintiff submits, in brief, that the situation in the California Superior Courts relating to the enforcement and application of non-judicial foreclosures by judicial evictions has reached a crisis of epidemic or even pandemic proportions, especially in the several counties grouped in the Central District of California, and

49.  That the civil rights of mortgagors (such as Plaintiff's grantor Carolyn H. Seeley) to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property" are being severely infringed under color of California law and in particular the judicial norms which apply to the conduct and resolution of Superior

13

Court cases challenging the standing of certain servicers or entities claiming standing to foreclose on
real-estate notes, such that the very right "inherit, purchase, lease, hold, and convey real and personal property" is being infringed upon or even curtailed.

**50.**     In other words, the laws of the state of California as applied, in particular Section 2924 of the California Civil Code and related statutes, are being so applied and enforced as to effectively abolish both private property and the rights to full and equal benefits of the laws for the security of persons and property.

**51.**     Although the present Plaintiff is himself a Native American National, White, descendant and heir to the inhabitants of ancient Spain, Sicily, and Ancient Morocco, he knows of no racial elements to this epidemic of civil rights violations, and alleges that the class which should be certified in this case will include tens if not hundreds of thousands of African-Americans, Hispanic Surname Americans, Asian Americans (such as his Grantor Ms. Seeley), and other racial groups, as well as Anglos, and accordingly, and submits that the essence of 42 U.S.C.  1981, 1982, can best be preserved and applied without the qualifying language "as is enjoyed by white citizens;" in essence, from now and into the future, the law of civil rights in the United States should truly be "color Blind" and the enforcement and utilization of this country's magisterial laws relating to equality under the law should not be denied to white people, although the Courts seem often to use this pretext.

**52.**     Accordingly, this United States District Court should apply to 42 U.S.C.  1981 and 1982 the principles articulated by the United States Supreme Court repeatedly over the past twenty years that all government racial classifications (including Federal classifications) must be analyzed by a reviewing court under strict scrutiny in the modern line of equal protection cases going back to the 1989 decision in ***Richmond v. Croson Adarand Constructors, Inc v. Pena***, 515 U.S. 200, 227,115 S.Ct 2097, 132 L.Ed.2d 158 (1995), ***Johnson v. California***, 336 F.3d 1117, 2003 Daily Journal D.A.R. 8295, (9th Cir., Jul 28, 2003),***Grutter v. Bollinger***, 539 U.S. 306, 123 S.Ct 2325, 156 L.Ed.2d 304, 2003 Daily Journal D.A.R. 6800, (U.S., Jun 23, 2003),

14

*Johnson v. California,* 542 U.s. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949, 2005 Daily Journal D.A>R. 2118, U.S., Feb 23, 2005),*City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 109 S. Ct. 706, 102 L.Ed.2d 854, (U.S. Va., Jan 23, 1989).

53. Plaintiff [:El] herein submits and suggests that the racial element of 42 U.S.C. Section 1981 has largely if not entirely outlived its usefulness, and that if the word "white" (before citizens) in 42 U.S.C. Section 1981 is replaced (at least conceptually) by the word " all free, fully enfranchised", then the law will acquire new and magisterial vigor in the modern world, and promote a more just and equitable society, especially in the context of the last seven years, in which more and more people (of all racial origins) have with increasing frequency and ferocity, been denied their equal right to access to the courts and to the formal and substantive rights and procedures essential to ensure true due process of law.

54. The Plaintiff in this case is, as noted, a Native American National, White, descendant and heir to the inhabitants of ancient Spain, Sicily, and Ancient Morocco, by racial and class categorization, but this classification itself is antique and pointless. The classes involved in this case are the mortgagors vs. the mortgagee, those who wish to use and enjoy private property against those who wish to monopolize it, and on another level, real property holders vs. false debt collectors.

## COUNT II: Civil Rights Declaratory Judgment (42 U.S.C. Sections 1983, 1988(a))

55. Plaintiff realleges paragraphs 1-54 as if fully copied and restated herein below (Rule 10).

56. Plaintiff [:El;] alleges that this is the custom, practice, and policy of Defendant CR TITLE SERVICES INC and other servicers, trustees, and their other attorneys similarly situated (Defendants DOES 1-X), as well as the Sheriff of Los Angeles County, and the Judges and Clerks of the Superior Court of Los Angeles County to violate 42 USC Sections 1981-1982 by administering and imposing a judicial regime wherein mortgagors are always, in all cases dispossessed

15

by forcible detainers, often with no prior notice of sale or transfer of interest in their properties.

57. The enforced consistent pro-mortgagee results of Los Angeles County evictions can be demonstrated statistically and by narrative evidence to show that there is no equality of access to the courts, nor any equal right "to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property" all under color of law in violation of the First, Fifth, Ninth and Fourteenth Amendments of the Constitution.

58. WHEREFORE, Plaintiff prays this Court declare and adjudge the nature of the California Superior Court custom, practice or policy concerning the resolution of non-judicial foreclosures and judicial evictions, as well as the allied and related policy of the California County Clerks and Sherriff's department in administering and enforcing this policy, and that thereupon the Court

59. Declare and adjudge that these customs, practices, and policies administered and enforced in the California Courts are wholly unconstitutional and offensive to principles of due process of law, the right to petition, and the rights of the people secured by 42 U.S.C. Sections 1981-1982, as well as the 5th and 14th amendments, such that:

60. All such policies should be declared unconstitutional, null and void and all decisions reached and transfer of title thereunder, not by Grantor Carolyn Seeley during the past year likewise be declared null and void and finally that

61. Defendants CITIMORTGAGE INC, CR TITLE SERVICES INC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, AND OLYMPIC INVESTMENTS INC, be now and forever enjoined from continuing or perpetrating these customs, practices, and policies in the California Courts or elsewhere.

62. WHEREFORE, Plaintiff prays for his costs of suit incurred in obtaining these declaratory judgments, and that a permanent injunction shall issue against all the Defendants, their employees, assigns, officers, and successors in interest never again to enforce unconstitutional non-judicial foreclosures and judicial evictions in violation of 42 U.S.C. Section 1981, 1982.

16

## COUNT IV: California Civil Code Section 1714.10 is UNCONSTITUTIONAL

63.     Plaintiff realleges paragraphs 1-62 as if fully copied and restated herein below (Rule 10).

64.     The California law providing that:

No cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action.

Violates 42 U.S.C. Section 1981 in that it creates a special classes of privileged citizenry and denies both equal protection of the law and due process to law to certain classes of citizens (non-lawyers).

65.     This Court should declare and adjudge that California Civil Code Section 1714.10 is facially unconstitutional under the First, Fifth, Ninth, and Fourteenth Amendments the Constitution as a denial of the right to Petition, denial of due process, infringement upon the rights reserved to the people, and a violation of equal protection of laws by creating a privileged class.

66.     The creation of this privileged class of attorneys also further violates both Article IV Section 1 Clause 2 by creating for California lawyers a special privilege and immunity not available to citizens of any other of the several states.

67.     No state can grant to any of its citizens special privileges or immunities which discriminate against citizens of other states or create an inequality between citizens of one state and those of another, but California Civil Code Section 1714.10 has this precise effect.

17

68. WHEREFORE Plaintiff prays that California Civil Code Section 1714.10 be declared unconstitutional, null and void for all purposes and

applications, and will grant them all their reasonable costs of suit as well as permitting them to sue all John and Jane Doe attorneys their actual damages resulting from their collusion and conspiracy with other Defendants and non-Defendants, including Superior Court Judges who may be immune from suit.

## COUNT V: California Civil Code Section 1714.10 DOES NOT IMMUNIZE CITIMORTGAGE INC, CR TITLE SERVICES INC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, OLYMPIC INVESTMENTS NOR THEIR ATTORNEYS

69. Plaintiff realleges paragraphs 1-68 as if fully copied and restated herein below (Rule 10).

70. Plaintiff alleges that CR TITLE SERVICES INC, and OLYMPIC INVESTMENTS INC and their respective attorneys, trustees, and agents (including several Defendants John or Jane Doe) are partners and investors in the real properties seized in eviction proceedings.

71. In particular, CR TITLE SERVICES INC, is a wholly owned subsidiary of CITIBANK N.A, who also owner of CITIMORTGAGE INC, shares office space with some of its attorneys, and Plaintiff further alleges that CR TITLE SERVICES INC is not acting merely in the course of representation of Trust beneficiaries, but for its own benefit and the gain of its attorneys and investors as potential buyers of the property in question (In this case, Defendant OLYMPIC INVESTMENTS INC).

72. There can not, even potentially, under the real circumstances of California non-judicial foreclosure, be any innocent, good faith, arms length transactions involving the sale of the subject property because the buyers would not and cannot be bona fide purchasers for value---they would not and cannot not have been bona fide purchasers in any event because they took from

18

CR TITLE SERVICES INC without either asking or knowing not to ask for proof of CITIMORTGAGE INC's status as "holder in due course" which is merely "conditional" in the sense that CITIMORTGAGE INC prove its entitlement to collect so much as one dime on the subject property at 6231 Drexel, Los Angeles California near [90048]

73. Plaintiff further alleges that any rule, even if not facially unconstitutional, is unconstitutional as applied according to a state judicial norm "which requires a judicial determination of reasonable probability of success prior to permitting the filing of an action against an attorney based on a claim of civil conspiracy with a client" because such a rule (as articulated by Defendants constitutes a per se denial of equal access to the courts due process and of equal access to the courts and legal processes in violation of 42 U.S.C Section 1981.

74. Access to discovery of facts is a key element of due process of law and equal access to the Courts as discovery procedures are often critical to the determination of the accuracy or inaccuracy of any legal complaint, suit at law, or equitable action.

75. Plaintiff alleges that CR TITLE SERVICES INC and OLYMPIC INVESTMENTS INC relationship and that of its Attorneys, with the Judges of the Los Angeles County and other California Countys' Superior Courts is so close and intimate that there exists a continuing and ongoing agreement and understanding between them in derogation of due process of law and equal protection of persons and property, in violation of 42 U.S.C. Sections 1981, 1982 and also of the Fifth and Fourteenth Amendments.

76. WHEREFORE, Plaintiff prays that (in the alternative to the previous count) even if California Civil Code Section 1714.10 is not unconstitutional on its face, it is either unconstitutional as applied to CR TITLE SERVICES INC and OLYMPIC INVESTMENTS INC and its attorneys or simply does not, as a matter of fact or law, apply to CR TITLE SERVICES INC and OLYMPIC INVESTMENTS INC and its attorneys at all, and Plaintiff prays that this Court will so declare and adjudge, granting them all their costs of suit, in addition to the full and unfettered right to recover from CR TITLE SERVICES INC and OLYMPIC INVESTMENTS INC and its attorneys John and/or Jane Doe, including all of Plaintiff's and his Grantor's damages

for civil conspiracy with other Defendants and non-defendants, including, but not limited to collusion or conspiracy with Superior Court Judges who may be otherwise immunized from suit.

## COUNT VI: California Civil Code Section 2924 Unconstitutionally Impairs Contract

77.  Plaintiff realleges paragraphs 1-76 as if fully copied and restated below (Rule 10).

78.  California Civil Code Section 2924 is expressly designed to impair the obligations and rights of and arising under contracts relating to mortgages and promissory notes, and to create grossly favored and disfavored classes of property owners based in large part on willingness to lie and nothing else; any statute designed to create unequal classes of litigants in Court directly violates 42 U.S.C. Section 1981, and California Civil Code Section 2924 irrationally and unfairly grants certain classes of individuals superior rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property" and thereby also creates unequal classes of people with regard to the rights "to inherit, purchase, lease, sell, hold, and convey real and personal property."

79.  Expressly and "on its face" California Civil Code Section 2924 provides in part:

(c) A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrances for value and without notice.

20

80. This express provision facially violates equal rights and irrationally denies equal access to the courts (guaranteed by 42 U.S.C. Sections 1981, 1982) to sue and give evidence to mortgagees whose properties were the victims of fraudulent foreclosures (foreclosures instituted or prosecuted by any party, principal, witness, or attorney willing either knowingly or negligently to present false recitations regarding compliance with statutory provisions regarding service and delivery of notices).

81. Neither CR TITLE SERVICES INC, OLYMPIC INVESTMENTS INC nor any of their agents or employees actually complied with all or in fact any of the statutorily mandated procedural requirements of noticing default or notice of sale prior to setting the September 7, 2010 sale of 6231 Drexel in Los Angeles, subject of this suit.

82. In fact, none of the Defendant CR TITLE SERVICES INC's assignment by Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC is void by a matter of law, as Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC has, and at no point, past, present or future, standing at law to assign any thing to anyone.

83. In the matter before the United States Bankruptcy Court for the Eastern District of California May 20th, 2010, In Re: Walker; Case Number 10-21656-E-11 (2010); The opinion states: " Since no evidence of MERS' (Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC) ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS concluded had no interest it could transfer to Citibank. **Since MERS did not own the underlying note, it could not transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law**" (See "Substitutions and Assignments for Subject Property", attached as **Exhibit B**)

84. For a law to provide that a mere recitation in a deed of certain facts will constitute **irrebuttable and conclusive evidence** which acts to bar or determine the outcome of any judicial proceeding does itself constitute a statutory denial of due process of law and a discriminatory disadvantage to those who are victims of fraudulent foreclosures (foreclosure by parties, principals, witnesses and

21

attorneys who make false statements of fact, such as claims to lawful right to fore, such as, Plaintiff's evidence will show,
are nearly all the foreclosures in California today, because in fact most foreclosures are conducted by parties without contractual entitlement to do so).

85.  Plaintiff submits that the non-judicial foreclosure laws of the state of California, especially, but not limited to Civil Code Section 2924(c) quoted above, expressly and unequivocally constitute (1) an impairment of the right to make and enforce contracts and to give evidence for the security of persons and property, (3) deny
equal protection of the law in the making and enforcing of contracts and to give evidence regarding the same for the security of persons and property, (2) deny due process of law in the making and enforcing of contracts and to give evidence regarding the same for the security of persons and property, (3) deny equal protection of the law in the making and enforcing of contracts and to give evidence regarding the same for protection of persons and property.

86.  WHEREFORE Plaintiff prays and request that this Court declare and adjudge that California Civil Code Section 2924(c) is unconstitutional on its face, and as such that all foreclosure sales against any of the Plaintiff or persons, entities similarly situated are entitled to a rescission of sale and restoration of their property.

87.  WHEREFORE, additionally, Plaintiff pray and requests that this Court declare and adjudge that all elements of contractual provisions, and compliance with contractual and statutory requirements for the proof of compliance, are equally subject to challenge and the presentation of evidence by any party to a contract or person, entity legitimately interested in the subject matter of the contract.

88.  No non-judicial foreclosure should be upheld judicially if the truth of the underlying facts, including the status of a buyer as a bona fide purchaser for value, is disputed or contested by competent witnesses presenting competent evidence, and accordingly no presumptions which create either the certainty or even the strong likelihoods that one side or another of any contractual dispute should prevail should ever withstand challenge under 42 U.S.C. Sections 1981, 1982, or the Fifth or Fourteenth Amendments to the

22

Constitution for the United States, (when read as color blind) statutes and constitutional provisions affording equal protection of the laws to all citizens and legal residents of the United States of America.

## COUNT VII: CALIFORNIA CIVIL CODE SECTION 2924 IS ALSO UNCONSTITUTIONAL AS APPLIED

89.   Plaintiff realleges paragraphs 1-88 as if fully copied and restated below (Rule 10).

90.   Defendants, but especially Defendant CR TITLE SERVICES INC in its capacity as Servicer implementing express Foreclosure business, all depend upon the California Courts' unconstitutional glosses and applications of and upon California Civil Code Section 2924 in addition to the statute's facial infringement upon the equal rights of all persons to make and enforce contracts, to sue and present evidence.

91.   As an example of the customary and practical application of 2924 in the Courts, Plaintiff cites the California case of **Homestead Savings v. Darmiento,** 230 Cal.App.3d 424, 436, 437 (1991) which held that:

> Where the evidence establishes that the trustee conveys title to a bona fide purchaser and the trustee's deed contains the language specified in Section 2924, the sale is not voidable.

And

> The purchaser's title is free and clear of all rights of the Trustor or anyone claiming under or through the Trustor, including liens that have attached to the property after the execution of the foreclosed deed of trust.

92.   These above-and-foregoing judicially formulated normative applications of Section 2924 violate, respectively, the same equal right to make and enforce contracts and to sue and give evidence for the security of persons to purchase, lease, sell, hold,

23

and convey real and personal property guaranteed by 42 U.S.C. Section 1982.

93. Another California case which shows the unconstitutional application of 2924 is ***Napue v. Gor-Mey West, Inc.,*** 175 Cal App.2d 608, 620-621, 220 Cal Rptr. 799 (Cal. App. 2nd Dist., Div. 3, 1985) as a judicially articulated norm having the force and effect of law:

Section 2924 of the California Civil Code creates a conclusive presumption in favor of a bona fide purchaser at a trustee's sale that if the trustee's deed recites that all requirements of law have been complied with regarding the mailing, posting, publication, or personal delivery of the notice of default and the notice of sale, the recitals conclusive. In other words, failure to comply with the notice requirements is a ground to cancel the sale only against a party who is not a bona fide purchaser. A sale to a bona fide purchaser is not voidable.

94. Conclusive presumptions which render certain transactions UNILATERALLY no-voidable deny equal access to the courts to sue and give evidence and further deny the equal right to purchase, sell, or convey property in plain and express violation of 42 U.S.C. Sections 1981, 1982.

95. The entire California non-judicial foreclosure system implemented with conclusive presumptions which cannot be rebutted either in forcible detainer or any other judicial proceedings inevitable tends to the absolute destruction of private property and the equal rights of all people to own and convey property, to make contracts, and to invoke the protection of the courts in so doing.

96. In short, California Civil Code Section 2924, both on its face and as applied, is a constitutional nightmare and a statute transitional to corporate-governmental communism where citizens only hold property at the sufferance of corporate-governmental financial services and property-holding conglomerates such as the banking and mortgage servicing defendants in this case.

deed of trust, Plaintiff requests the entry of an injunction to enjoin Defendant's actions pursuant to California Business and Professions Code Section 17203.

103. Plaintiff will be irreparably injured if the parties are not enjoined in that he will suffer complete loss of his unique real property, which is not capable of being duplicated, loss of all equity, loss of the right of possession and to live in their property, including the right of quiet enjoyment, would be uprooted and have themselves uprooted from the community, and would suffer great personal injury, including defamation of his credit, the infliction of emotional distress upon Plaintiff and Plaintiff's grantor, and assignor, which has already under duress due to the harassment of all parties, especially Defendant OLYMPIC INVESTMENTS INC agents, and employees.

104. Any potential harm to Defendants is slight when compared to the damage to be suffered by Plaintiff and his grantor, assignor, and the equities balance and tip heavily in favor of Plaintiffs.

105. Plaintiff has no other adequate remedy at law.

106. Plaintiff seeks entry of a preliminary injunction on an ex parte basis without notice to the named Defendants in that, were the defendants given advance notice of these proceedings they would in all likelihood seek to accelerate the damage Plaintiff seeks to apprehend. Plaintiff has a good likelihood of prevailing on the merits of claim due to the nature and extent of Defendants violations.

107. Plaintiff requests that the restraining Order be issued without bond as Plaintiff is unable to afford a bond of any kind or type. Defendants will not be irreparably injured by the issuance of a stay given in the present economic climate and the obscene profits defendants already have made.

## COUNT IX: ACCOUNTING RELIEF

108. Plaintiff realleges and incorporates paragraphs 1-107 by reference under Rule 10(b)-(c).

109. Plaintiff's assignee tendered payment to Defendant CITIMORTGAGE INC on or around August 2nd, 2010.

26

110. Plaintiff's assignee also noticed Defendants CR TITLE SERVICES INC and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC on or around August 2nd, 2010.

111. The aforementioned defendants from the previous paragraph accepted tender and notice of tender of payment on or around August 10th, 2010.

112. The aforementioned defendants from paragraph 110, never responded to the tender nor did Defendant CITIMORTGAGE INC return the tendered instrument, and have thus by defendants inaction, dishonored the tendered payment within the meaning of the California Commercial Code Section 3603.( See "Canceled Instruments", attached as **Exhibit F**)

113. A controversy exists between Plaintiff [: Phillip-Andrew: El;] and Defendant CITIMORTGAGE INC with respect to the correct amount of money that is actually owed by Plaintiff as assignee to Ms. Seeley. Defendants dishonored tender of Payment, so pursuant to California Commercial Code Section 3603, the alleged debt is discharged by acceptor's dishonor.

114. Plaintiff alleges that accounting should include a submission of the Original Note that the Defendants should possess standing and status as "holders in due course" or as directly authorized agents of the true holder in due course with sufficient direct access to and Privity of contract and ongoing relationship with such holder as to name him/her/it and produce the commercial paper/ original (monetized) promissory note accordingly.

115. Plaintiff contests that without the Privity of contract or original note the sum will forever be and indefinitely disputed because without said note Plaintiff believes that the Defendants have no right to collections of any kind.

116. As a result the correct amount of money due and owing from Plaintiff as assignee to Defendants remains in dispute and cannot

be determined without an accounting and a submission of evidence.

117. Therefore Plaintiff demands in this litigation that all Defendants make available its books and records (only as they relate to the alleged loans made to Plaintiff's assignors Carolyn H Seeley) in

27

order that Plaintiff may have a qualified representative audit the books, records, federal reserve collateral and borrower in custody agreements to determine the accounting of the financial transaction(s) made regarding the note or the securitization of said note.

## COUNT X: UNFAIR DEBT COLLECTION PRACTICES AND PREDATORY LENDING

118. Plaintiff realleges and incorporates paragraphs 1-118 as allowed by Rule 10(b)-(c), FCRP.

119. Plaintiff alleges upon information and belief that the Defendants acting jointly and severally, and in each of them, in taking the actions aforementioned independently, have violated provisions of California's Rosenthal Fair Debt Collection Practices Act, including but not limited to Civil Code 1788(3) and (f), and the Federal Fair Debt Collections Act, 15 U.S.C., Title 41, Subchap. V. Sections 1692 **et seq**., and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. Sections 2601-2617.

120. The Court should determine whether or not the defendants have violated state securities laws as seen by California Financial Code Sections 33560(c) and 22340 is applicable where there is fraudulent selling of eligible notes when in fact they are not selling them, merely the collection rights under the servicing agreement.

121. A judicial determination is appropriate to determine the plaintiff's rights and duties with regards to the property loans/ and or foreclosure. A declaration of rights and duties of the parties by the court is necessary to determine the actual status and validity of the loan and any rights, duties, and/or obligations to be enforced.

122. Plaintiff is informed and believes his alleged grounds for cancellation of the mortgage documents and deeds of trust for cause as stated herein and specifically as the character and relationship of the parties, the existence of the ground for recovery, including fraud, false representations, or impossibility of performance, defendants' failure to perform, and the inadequacy of remedy at law.

PLAINTIFF'S ORIGINAL COMPLAINT FOR QUIET TITLE

123. The court should declare as a matter of equity that laches applies to bar the alleged debt collector, or, since the trustee failed to comply with the Fair Debt Collections Practices Act in order to proceed to trustee sale of the property, the trustee is equitably estopped from taking any further action against the property.

124. There is no uniformly accepted definition of "predatory lending." However, the United States Department of Housing and Urban Development ("HUD") has defined predatory lending as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics, or taking unfair advantage of a borrower. (As of June 26, 2008 California Attorney General and Illinois Attorney General have filed a Law suit against Countrywide Home Loans.)

125. Since predatory lenders are constantly developing new techniques to take advantage of borrowers, it is generally accepted by the lending industry and government agencies that monitor that industry that predatory lending practices include engaging in aggressive, high pressure and/or misleading tactics. Defendants, and each of them, engaged in this kind of conduct towards Plaintiff [: EI;].

126. Defendants and each of them is directly or through agents or employees entities or persons actively involved in the extension of credit as said term is defined under

127. Plaintiff further alleges that these violations are such as to require rescission and or cancellation of the loan herein and return of all funds received by Defendants from the original borrowers who assigned their rights to Plaintiff Ms. Seeley through deeding the property, a POA and an Assignment of Rights to Notes and obligations.

128. Plaintiff alleges that Defendants and each of them are such as to fall within the requirements of the Real Estate Settlement Procedure Act (RESPA)., and placed loans for the purpose of unlawfully increasing and otherwise obtaining yield spread fees, excess charges and amounts in excess of wired hat would have been lawfully earned.

129. In addition to the requirements of RESPA, LENDERS acted either individually or jointly as "Servicers" as that term is used in within the act and either individually or jointly violated the requirement of

26 U.S.C. Section 2605 (b) in that the serving or duties there under were transferred or hypothecated without required notice.

**130.** Plaintiff [:Phillip-Andrew: El;] alleges that these violations are such as to require rescission and/or cancellation of her assigner's loan herein and return either to her as trustee or to her assignors directly of all funds received by Defendants CITIMORTGAGE INC, or its predecessors COUNTRYWIDE HOME LOANS INC, from the original borrowers who assigned their rights to Plaintiff.

**131.** Plaintiff further alleges that he is entitled to compensatory damages and an amount to be determined at trial-by-jury, for which demand is here made.

## COUNT XI: DECLARATORY JUDGEMENT:
## NO VALID CONTRACT EXIST

**132.** Plaintiff realleges and incorporates  1-134 allowed by R.  10(b)-(c), FRCP.

**133.** Contracts can be absolute or relative nullities, void or voidable, depending on the violation of certain percepts of common and statutory law.  Plaintiff contends that her mortgage contract was merely voidable on the day they signed in, owing to circumstances and transactions intended but concealed from them by the Defendants, but that after securitization of their note and transfer of same either to third party   investors as individual note or (more likely) in a pool of scrutinized notes, Defendants' claim against Plaintiff in particular were absolute nullities, void, if not **ab initio**, then void **ab hora delicate**, (void from the time of offense) the tort or detrimental act in question being the sale or securitization of their note without either notice or acknowledgment that this breach of contract and transfer of legal contractual title and interest had taken place.

**134.** Under California Civil Code Section 1549-1550 **et seq.,** a contract is an  "agreement to do or not to do certain thing" which requires mutual promises of detrimental undertaking between at least two parties; the detrimental undertakings are the bargain for exchange known as "consideration."

30

**135.** Plaintiff alleges that her obligation to CITIMORTGAGE INC, constituted and was treated as an asset to CITIMORTGAGE INC, providing only detriment from the Plaintiff, incurring no detriment on their part nor without any benefit flowing from CITIMORGAGE INC, and therefore not constituting valid consideration within the meaning of California Civil Code Section 1605.

**136.** A contract concerning a real property is not binding on either party unless its obligations are mutual and reciprocal. **Prather v. Vasquez**, 162 Cal. App. 2d 198,327 P.2d 963 (1958).

**137.** An unenforceable contract as between the two original parties transfers no right to title or interest in said property; Carolyn Seeley's contract with ABN AMRO MORTGAGE GROUP INC, lacked bilateral detriment and mutuality and is therefore now unenforceable by the new "assignee" or "buyer," Defendant CITIMORTGAGE INC, because (a) ABN AMRO MORTGAGE GROUP INC's promises were illusory and did not actually bind or arise from ABN AMRO MORTGAGE GROUP INC at all.

**138.** Where one party elicits promise from another but neither promises nor undertakes any action detrimental to itself, that party has not "contracted" with the other within the understanding of common law, because "mutual detriment " was said to be the "glue" that invested both parties in the success of the joint venture.

**139.** The Originator ABN AMRO MORTGAGE GROUP INC, nor Defendant CITIMORTGAGE INC, neither promised nor did transfer its own money to Ms. Seeley but the money of an unidentified third party (possibly "Fannie Mae" or Freddie Mac").

**140.** Whereas in the Deed of Trust (see Exhibit), tendered either by AMRO MORTGAGE GROUP INC, it does not state that ABN AMRO MORTGAGE GROUP INC was the lawful owner of the money it was delivering to Carolyn Seeley, nor even that the money was advanced against the credit of AMRO MORTGAGE GROUP INC, nor any indication of detrimental action promised or undertaken by CITIMORTGAGE INC, as apparent new holder in due course.

**141.** Plaintiff alleges and will show, pursuant to Section 1614-1615 of the California Civil Code, that ABN AMRO MORTGAGE GROUP INC, provided nothing of any value to Ms Seeley, and now

31

CITIMORTGAGEINC, cannot show that it promised to transfer or did in fact transfer anything actually belonging to or possessed by CITIMORTGAGE INC, to the Plaintiff; wherefore, no valid encumbrance was created by the Deed of trust or Mortgage Contract between Carolyn Seeley and ABN AMRO MORTGAGE GROUP INC, and CITIMORTGAGE INC, despite the existence of a written instrument, which creates a rebuttable presumption of consideration under California law.

142. In short, the "loan" document does not indicate or even substantially suggest that ABN AMRO MORTGAGE GROUP INC, subsequently Defendant CITIMORTGAGE INC, never actually took any action detrimental to itself, but purpose of the written instrument was to confirm and specify that Ms. Seeley, now the Plaintiff, by way of assignation of right, had given up things of value, to their own detriment, and would be required to give up more things of value, while ABN AMRO MORTGAGE GROUP INC, promised nothing, Plaintiff alleges that ABN AMRO MORTGAGE GROUP INC, in fact did nothing (except to collect payments) and CITIMORTGAGE INC, is simply following suit.

143. This is a standard financial industry practice, but that the fact that it is common practice, does not mean that common practice satisfies the California common or statutory law of contractual viability because the consideration for a promise must be an act or return promise, bargained for and given in exchange for the promise. **Prather v. Vasquez, supra.**

144. A mortgage is originates after a broker or "originating institution" receives a series of promises from a "borrower"; these promises take the form of a mortgage contract and a negotiable instrument known as a " promissory note."

145. The originator typically neither promises nor undertakes any action detrimental to itself, while soliciting and receiving a large number of promises and actions detrimental to the note grantor or borrower.

146. A promissory note is securitized by transfer of the " borrower's" or grantor's note into a bundle of similar notes, group ranked and rated by FICO scores, date, location. And value of property, into Mortgage-Backed Equity or Collateral  Backed Obligation (MBE or CBO).

32

147. Once a promissory note is transferred into a securitized bundle, the originator or initial lender in no longer "holder of due course" of said note as a matter of law, and is no longer in privity with the "borrower" or original grantor.

148. ABN AMRO MORTGAGE GROUP INC, originated the securitized Ms. Seeley's mortgage and note and in fact transferred legal and beneficial interest in that note to an unknown party, before Defendant CITIMORTGAGE INC bought ABN AMRO MORTGAGE GROUP INC. They are making money hand over fist and simply want more money when in fact the Loan is effectively paid and some poor Swiss banker is left wringing his hands across the ocean looking for the security he supposedly bought in to.

149. Wherefore and accordingly, Plaintiff pray first that this court will declare that the original contract between Carolyn Seeley was unsupported by any detrimental promises or performance on behalf of either ABN AMRO MORTGAGE GROUP INC, or now CITIMORTGAGE INC, pursuant to mortgage finance industry and custom, and in additionally or in the alternative that this Court will declare and adjudge that ABN AMRO MORTGAGE GROUP INC, having securitized the mortgage, was no longer the holder in due course of Ms. Seeley's note and had no right title or interest in the enforcement or collection of that note.

150. Wherefore and accordingly, Plaintiff [:Phillip-Andrew: El;] prays that this court will declare and adjudge that no valid contract exists or even existed between Carolyn Seeley and CITIMORTGAGE INC, and that quiet title should now be awarded accordingly to him as the assignee of Ms. Seeley's rights with Power of Attorney (**Exhibit I** ).

## COUNT XII: FRAUD OR NEGLIGENT MISREPRESENTATION:

CALIFORNIA RECONVEYANCE COMPANY KNEW OR SHOULD HAVE KNOWN

151. Plaintiff realleges paragraphs 1-151of this complaint and incorporates the same by reference as if fully copied and restated herein below.

33

152. Plaintiff Ms. Seeley alleges that ,in fact, CR TITLE SERVICES INC, could not possibly have acted in good faith within the meaning of California Civil Code Section 2924(b), because the contractual term recited even in the deed of trust, are so one sided and devoid of any obligation to perform any act on the part of ABN AMRO MORTGAGE GROUP INC, that real estate professionals knew or should have known that they were in fact participating in and facilitating a fraud.

153. Also the underlying concerns surrounding mortgage in this Country is the product of YEARS of questionable practices and policies that have been litigated since the existence of MERS in early 2000.

154. Plaintiff alleges that Defendant CITIMOTGAGE INC, in so acting with this case and with respect to many other mortgage or trust deed security instruments engage in a pattern and practice of utilizing the non-judicial foreclosure procedures of this State to foreclose on properties when they do not, in fact, have the right to do so, knowing the property owner affected do not have the knowledge and means to contest the right of said Defendants to do so.

155. California Civil Code Section 1614 and 2924 afford any legal immunity or protection to fraudulent devices in mortgage finance, those provisions of the California Civil Code should be declared unconstitutional impairments on the obligations of contract forbidden to the States and Federal Government under the Constitution for the United States of America.

## COUNT XIII: QUIET TITLE TO
## 6231 Drexel Avenue Los Angeles, California 90049

156. Plaintiff realleges paragraphs 1-156 of this complaint and incorporates the same by reference as if fully copied and restated herein below.

157. Plaintiff now sues for quiet title to 6231 Drexel Avenue Los Angeles, California 90049 pursuant to California Action to Quiet Title Statute contained in California Civil Code. Proc. Section 760.010-Section760.020, Plaintiffs assert this claim to establish their title to 6231 Drexel, against the adverse claims of CITIMORTGAGE INC, its Trustee CR TITLE SERVICES INC,

34

OLYMPIC INVESTMENTS INC. and all Jane and John Does that may or may not have supposed interest in the title to Ms. Seeley's homestead.

158. Plaintiff defines Jane and John Does as anyone who may have any supposed interest in Title.  Plaintiff believes that, given the current state of this economy (which is rife with fraud) that there could be other fraudulent parties, outside of CITIMORTGAGE INC and OLYMPIC INVESTMENTS INC that may assert ownership. Plaintiff, though wary of fraud, welcome the appearance to the true Original Note Holder and also assign the title of John and Jane Does to any TRUE holder of the note, whether they be HSBC or some Swiss bank in Zurich.

159. Jurisdiction and venue are proper pursuant to Sections760.040-769.050 because 6231 Drexel Avenue Los Angeles, California 90048, the principal property in question for which quiet title is sought, is located within the County of the United States District Court for the Central District of California.

160. Plaintiff will file a *lis pendens* as required by Section 761.010 with County Clerk of LA County. Pursuant to Section 761.010 Plaintiff identify the principal property as 6231 Drexel Avenue Los Angeles, California 90048, being a:

**LOT 4 IN BLOCK 27 OF TRACT NO. 7555, IN THE CITY OF LOS ANGELES,  LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 88, PAGES 79 TO 84 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

161. Plaintiff asks and prays for relief this Court to grant quiet title to the Plaintiff, because CITIMORTGAGE INC's, encumbrance on the subject property entirely depends on a contract, which was either void ab initio or voidable by Plaintiff as assignees and transferee (successor in interest) to Carolyn Seeley for the simple reasons that (a) ABN AMRO MORTGAGE GROUP  INC, undertook  not to assume and accept no detriment to itself nor any entity under its control, and there was accordingly no mutuality of consideration, (b) even if ABN AMRO MORTGAGE GROUP  INC, were a bona fide contracting party on origination, after securitizing of Ms. Seeley's note, and ceased to have any privity of contract with

35

Ms. Seeley, or their successor in interest and Defendant CITIMORTGAGE INC.

162. To this end, Plaintiff ask this Court to devise a mean of publishing or effectively noticing the purchasers of their securitized mortgage note to appear and answer this complaint or be forever barred from doing do, even if John Does or Jane Does or Corporations who are the actual holders in due course of Carolyn Seeley's note reside or are incorporated or do business abroad.

163. Plaintiff reserves the right to amend this Complaint for Quiet Title to conform with California law before any final determination of the legal sufficiency of this Complaint.

164. Pursuant To Section 764.010, Plaintiff prays that the Court will hold a hearing to examine into and determine Plaintiff's Claims against all of the Defendant, and that upon Final Trial-by-Jury , demand for which is hereby made and tendered, that the Court will award Plaintiff [:Phillip-Andrew: El;] quiet title to her property, the subject of this lawsuit, ordering that all encumbrance and liens, including the Deed of Trust filed by or on behalf of Defendants, be ordered stricken and removed as VOID if otherwise  required to remain in the public property records of each relevant county.

165. WHEREFORE, the involved officers, directors, employees, and agents of  CITIMORTGAGE INC, who offered the false and fraudulent Mortgage Modification proposal to Assignor Carolyn Seeley, including but not limited to CR TTITLE SERVICES INC. and all its officers, directors and employees, knows or should know that CITIMORTGAGE INC, no longer had legal right, title, nor any equitable or beneficial interest in the enforcement of Ms. Seeley's note, and should  be both temporarily and permanently enjoined from proceeding against 6231 Drexel Avenue Los Angeles, California 90048.

## TRIAL –BY-JURY

161.    Plaintiff demands a trial-by-jury of all issues of fact so triable, and all mixed questions of law and fact which may be triable as a matter of controlling case law and Plaintiff demands an advisory jury on all other matters to the extent permitted by law, with appropriate instruction distinguishing the advisory from the deciding issues presented to the

jury for resolution.

# PRAYER FOR RELIEF

Plaintiff [:Phillip-Andrew: El;] prays that this Courts will find this Complaint sufficient to allow discovery and then to proceed to final trial-by-jury for final resolution of all questions of fact at common law as guaranteed by the 7th Amendment, 28 U.S.C. Section1861, and Rules 38-39 of the Federal Rules of Civil Procedure, and that the Courts will thereupon render judgment for the Plaintiff as assignee of the rights of Carolyn Seeley, and against all defendants for the relief requested above, including but not limited to declaratory judgment regarding the rights and statues of each party in relation to the property at 6231 Drexel Avenue Los Angeles, California 90048 and the interest assigned to Plaintiff in such property and the note, *transactions, and occurrences relating to the same.*

Respectfully submitted,

Monday, November 2nd, 2010

By: _All Rights Reserved_

[:Phillip-Andrew; El;], ~~All Rights Reserved~~, Reserving All Rights, under penalty of perjury without the "Untied States in accordance with 28 U.S.C. Section 1746.

PLAINTIFF'S ORIGINAL COMPLAINT FOR QUIET TITLE

# EXHIBIT KEY

**EXHIBIT A-"DEED OF TRUST"**

**EXHIBIT B-"ASSIGNMENTS/SUBSTITUTIONS"**

**EXHIBIT C-"NOTICE OF DEFAULT"**

**EXHIBIT D-"NOTICE OF SALE"**

**EXHIBIT E-"RESCISSION NOTICE/ADVERSE CLAIM"**

**EXHIBIT F-"CANCELED INSTRUMENTS"**

**EXHIBIT G-"GRANT DEED TO TRUST"**

**EXHIBIT H-"TRUSTEE'S DEED AFTER SALE"**

**EXHIBIT I-"POWER OF ATTORNEY"**

**EXHIBIT J-"COURT ORDER"**

PLAINTIFF'S ORIGINAL COMPLAINT FOR QUIET TITLE

# EXHIBIT A-"DEED OF TRUST"



**This page is part of your document - DO NOT DISCARD**

**06 2649645**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**11/30/06 AT 08:00am**

**TITLE(S) :**



L E A D    S H E E T

**FEE**                                                                    **D.T.T.**

FEE $ 55 LL 17

**CODE**
**20**        D.A. FEE Code 20        $ 2.00

**CODE**
**19**

**CODE**
**9____**

NOTIFICATION SENT $4

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**




**THIS FORM IS NOT TO BE DUPLICATED**

2

11/30/06

**20062649645**

FIDELITY-VAN NUYS

When recorded mail to:
ABN AMRO MORTGAGE GROUP, INC.
1201 EAST LINCOLN
MADISON HEIGHTS, MICHIGAN 48071-4171
ATTN:FINAL/TRAILING DOCUMENTS

5510-00-0040

19488751

LOAN #: 654170182

[Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated NOVEMBER 21, 2006,        together with all Riders to this document.

(B) "Borrower" is CAROLYN H SEELEY.

Borrower is the trustor under this Security Instrument.

(C) "Lender" is ABN AMRO MORTGAGE GROUP, INC.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2004 Online Documents, Inc.                    Page 1 of 12

Initials:  CHS
CAUDEED   CAUDEDL  0402
11-21-2006 12:42

**LOAN #: 654170182**

Lender is a **CORPORATION**                                organized and existing under the laws of
**DELAWARE.**                                               Lender's address is **2600 W. BIG BEAVER**
**RD., TROY, MICHIGAN 48084.**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **Fidelity National Title Company**

**(E) "Note"** means the promissory note signed by Borrower and dated **NOVEMBER 21, 2006.**       The Note
states that Borrower owes Lender ******************************FIVE HUNDRED THOUSAND AND NO/100
********************************************** Dollars (U.S.   **$500,000.00   )**
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than **DECEMBER 1, 2036.**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be
executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] V.A. Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic
tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is
not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu
of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA"
refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the
Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications
of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01         **Initials:**
© 1999-2004 Online Documents, Inc                **Page 2 of 12**                                  CAUDEDL  0402
                                                                                                  **11-21-2006 12:42**

**LOAN #: 654170182**

Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following
described property located in the **COUNTY**                                            [Type of Recording Jurisdiction]
of  **LOS ANGELES**                          [Name of Recording Jurisdiction]:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**   Exhibit "ONE"

which currently has the address of  **6231 DREXEL AVE, LOS ANGELES,**

[Street] [City]

California      **90048**              ("Property Address")·
                {Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant
and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants
and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay
when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges
due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the
Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received
by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that
any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following
forms, as selected by Lender: (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's
check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,
instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any
payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may
accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or
prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such
payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date,
then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes
payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either
apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal
balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the
future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument
or performing the covenants and agreements secured by this Security Instrument.

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   Form 3005 1/01        Initials:
© 1999-2004 Online Documents, Inc                        **Page 3 of 12**                                      CAUDEDL  0402
                                                                                                          **11-21-2006 12:42**

LOAN #: 654170182

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority. (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

LOAN #: 654170182

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken

LOAN #: 654170182

promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: OB

CAUDEDL  0402
11-21-2006 12:42

LOAN #: 654170182

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an

LOAN #: 654170182

opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that
such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement
or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable
Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any
interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's
security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security
Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be
applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied
to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property
immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums
secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower
and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount
of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately
before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately
before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property
immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured
immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in
writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not
the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as
defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender
within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds
either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then
due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom
Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment,
could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under
this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in
Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes
forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security
Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest
in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order
provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or
modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any
Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of
Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to
refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by
reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by
Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third
persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver
of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees
that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security
Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage,
grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally
obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can
agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or
the Note without the co-signer's consent.

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**   **Form 3005 1/01**
© 1999-2004 Online Documents, Inc.                     **Page 8 of 12**

Initials:

CAUDEDL  0402
11-21-2006  12:42

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01**
© 1999-2004 Online Documents, Inc                           **Page 9 of 12**

Initials: _CB_
CAUDEDL  0402
11-21-2006 12:42

LOAN #: 654170182

all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21. (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal

Initials: _____

CAUDEDL  0402
11-21-2006 12:42

LOAN #: 654170182

residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2004 Online Documents, Inc                    **Page 11 of 12**

Initials: _____
CAUDEDL 0402
11-21-2006 12:42

LOAN #: 654170182

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CAROLYN H SEELEY

State of CALIFORNIA                     County of: Los Angeles

On November 21, 2006, before me, Ryan W. Dupuis, Notary Public
(here insert name and title of the officer), personally appeared CAROLYN H SEELEY, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

RYAN W. DUPUIS
Commission # 1593874
Notary Public - California
Los Angeles County
My Comm Expires Jul 8, 2009

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01
© 1999-2004 Online Documents, Inc             **Page 12 of 12**
CAUDEDL 0402
11-21-2006 12:42

## EXHIBIT "ONE"

Lot 4, in Block 27 of Tract No. 7555, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 88 Pages 79 to 84 inclusive of maps, in the office of the County Recorder of said county.

Assessor's Parcel No: 5510-001-004

/5

LOAN #: 654170182

# INITIAL INTEREST℠ ADJUSTABLE RATE RIDER
## (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this    21ST   day of NOVEMBER, 2006          and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable Rate Note (the "Note") to  ABN AMRO MORTGAGE GROUP, INC., A DELAWARE CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:  6231 DREXEL AVE
LOS ANGELES, CA 90048

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of    6.500%.   The Note provides for interest only payments until the first fully amortizing principal and interest payment due date (the "First P&I Payment Due Date"), which is the    1ST    day of JANUARY, 2014.
The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Interest Change Dates
The interest rate I will pay may change on the    1ST    day of DECEMBER, 2013 and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."
### (B) The Index
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in **The Wall Street Journal**. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials: ____

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable after Initial Period)--Single Family--Freddie Mac UNIFORM INSTRUMENT Form 5137 7/05
© 2005 Online Documents, Inc          Page 1 of 4          F5137RDU   F5137RLU   0510
11-21-2006 12:42

*16*

LOAN #: 654170182

**(C)Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-FOURTH percentage point(s) ( 2.250% ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than 11.500% or less than 2.250%. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than TWO percentage point(s) ( 2.000% ) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.500%.

**(E)Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F)Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1. UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials:

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable after Initial Period)--Single Family--Freddie Mac UNIFORM INSTRUMENT Form 5137 7/05

© 2005 Online Documents, Inc                    Page 2 of 4                    F5137RLU  0510
                                                                                11-21-2006  12:42

*17*

LOAN #: 654170182

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Initials: _OB_

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable after Initial Period)--Single Family--Freddie Mac UNIFORM INSTRUMENT Form 5137 7/05

© 2005 Online Documents, Inc.          **Page 3 of 4**          F5137RLU  0510
11-21-2006  12:42

*18*

LOAN #: 654170182

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____ (Seal)
CAROLYN H SEELEY

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable after Initial Period)--Single Family--Freddie Mac UNIFORM INSTRUMENT Form 5137 7/05
© 2005 Online Documents, Inc              **Page 4 of 4**                         F5137RLU  0510
                                                                    11-21-2006 12:42

1

**EXHIBIT B-"ASSIGNMENTS/SUBSTITUTIONS"**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

41

▲  **This page is part of your document - DO NOT DISCARD**  ▲

## 06  2746469

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

**8:01 AM DEC 11 2006**

# TITLE(S) :

▲



L E A D     S H E E T

**FEE**                                                              **D.T.T.**

| FEE $ | 19 | ST |
| DAF $ | 9 | |
| C-20 | | |

**CODE
20**

**CODE
19**

**CODE
9**____

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

▲       **THIS FORM IS NOT TO BE DUPLICATED**       ▲

Recording Requested by·
ReconTrust Company, N A
1330 W  Southern Ave
MS. TPSA-88
Tempe, AZ 85282-4545
(800) 540-2684

**06  2746469**

When recorded return to.
CAROLYN H SEELEY
6141 Drexel Ave
Los Angeles, CA 90036

Above Space for Recorder's Use
DOCID#000560889762005N

## SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

WHEREAS,      CAROLYN H SEELEY

was the original Trustor, under that certain Deed of Trust dated 04/21/2004 and recorded 05/11/2004, as Instrument or Document No 041178426, in Book N/A, Page N/A, of Official Records of the County of LOS ANGELES, State of California.

WHEREAS, the undersigned, Mortgage Electronic Registration Systems, Inc , as the present Beneficiary(s) under said Deed of Trust hereby substitutes a new Trustee, ReconTrust Company, N.A., under said Deed of Trust, and ReconTrust Company, N A  as Trustee under said Deed of Trust does hereby reconvey, without warranty, to the person or persons legally entitled thereto, the estate now held by Trustee under said Deed of Trust

Dated· 11/30/2006

**New Trustee:**
   ReconTrust Company, N.A

**Current Beneficiary:**
   Mortgage Electronic Registration Systems, Inc

Roxanne Bermea
Assistant Secretary

Peter Lopez
Assistant Secretary

STATE OF ARIZONA
COUNTY OF  MARICOPA

On 11/30/2006, before me, Marie Barclay, Notary Public, personally appeared Roxanne Bermea and Peter Lopez, both personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entities upon behalf of which the persons acted, executed the instrument

Witness my hand and official seal.

OFFICIAL SEAL
MARIE BARCLAY
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires Oct. 8, 2009

Marie Barclay
Marie Barclay
Notary Public for said State and County
Expires: 10/08/2009



▲   **This page is part of your document - DO NOT DISCARD**   ▲

**06  2786955**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

**8:01 AM  DEC  14  2006**

# TITLE(S) :

▲



L E A D   S H E E T

▲

**FEE**

Code 01 - 14.00          Code S003 - 001
Code 20 - 04.00          Code R002 - 001

**D.T.T.**

**CODE
20**

**CODE
19**

**CODE
9____**          Grand Total = $18.00          Page Count = 1

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**          **Number of AIN's Shown**

   **THIS FORM IS NOT TO BE DUPLICATED**   ▲

06 2786955

Recording Requested by:
ReconTrust Company, N.A.
1330 W. Southern Ave.
MS: TPSA-88
Tempe, AZ 85282-4545
(800) 540-2684

When recorded return to:
CAROLYN H SEELEY
6231 Drexel Ave
Los Angeles, CA 90048

Above Space for Recorder's Use
DOCID#000561412312005N

## SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

WHEREAS,     CAROLYN H SEELEY
was the original Trustor, under that certain Deed of Trust dated 04/21/2004 and recorded 05/11/2004, as Instrument or Document No. 041178427, in Book N/A, Page N/A, of Official Records of the County of LOS ANGELES, State of California.

WHEREAS, the undersigned, Countrywide Home Loans, Inc. (fka Countrywide Funding Corporation), as the present Beneficiary(s) under said Deed of Trust hereby substitutes a new Trustee, ReconTrust Company, N.A., under said Deed of Trust, and ReconTrust Company, N.A. as Trustee under said Deed of Trust does hereby reconvey, without warranty, to the person or persons legally entitled thereto, the estate now held by Trustee under said Deed of Trust.

Dated: 12/05/2006

**New Trustee:**
ReconTrust Company, N.A.

**Current Beneficiary:**
Countrywide Home Loans, Inc. (fka Countrywide Funding Corporation)

Roxanne Bermea
Assistant Secretary

Peter Lopez
Assistant Secretary

STATE OF ARIZONA
COUNTY OF MARICOPA
On 12/05/2006, before me, Marie Barclay, Notary Public, personally appeared Roxanne Bermea and Peter Lopez, both personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entities upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal.

OFFICIAL SEAL
MARIE BARCLAY
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires Oct. 8, 2009

Marie Barclay
Notary Public for said State and County
Expires: 10/08/2009



▲   This page is part of your document - DO NOT DISCARD   ▲

## 06 2786955



RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
·CALIFORNIA

8:01 AM   DEC 14 2006

## TITLE(S) :

▲ _____ ▲



L E A D    S H E E T

**FEE**                                                      **D.T.T.**

  Code 01 - 14.00      Code S003 - 001
  Code 20 - 04.00      Code R002 - 001

**CODE
20**

**CODE
19**

**CODE
9**___   Grand Total = $18.00            Page Count = 1

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

▲      **THIS FORM IS NOT TO BE DUPLICATED**      ▲

06  2786955

Recording Requested by:
ReconTrust Company, N.A.
1330 W. Southern Ave.
MS: TPSA-88
Tempe, AZ 85282-4545
(800) 540-2684

When recorded return to:
CAROLYN H SEELEY
6231 Drexel Ave
Los Angeles, CA 90048

Above Space for Recorder's Use
DOCID#000561412312005N

## SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

WHEREAS,     CAROLYN H SEELEY
was the original Trustor, under that certain Deed of Trust dated 04/21/2004 and recorded 05/11/2004, as Instrument or Document No.
041178427, in Book N/A, Page N/A, of Official Records of the County of LOS ANGELES, State of California.

WHEREAS, the undersigned, Countrywide Home Loans, Inc. (fka Countrywide Funding Corporation), as the present Beneficiary(s)
under said Deed of Trust hereby substitutes a new Trustee, ReconTrust Company, N.A., under said Deed of Trust, and ReconTrust
Company, N.A. as Trustee under said Deed of Trust does hereby reconvey, without warranty, to the person or persons legally entitled
thereto, the estate now held by Trustee under said Deed of Trust.

Dated: 12/05/2006

**New Trustee:**
ReconTrust Company, N.A.

**Current Beneficiary:**
Countrywide Home Loans, Inc. (fka Countrywide Funding Corporation)

Roxanne Bermea
Assistant Secretary

Peter Lopez
Assistant Secretary

STATE OF ARIZONA
COUNTY OF MARICOPA
On 12/05/2006, before me, Marie Barclay, Notary Public, personally appeared Roxanne Bermea and Peter Lopez, both personally
known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within
instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the
instrument the persons, or the entities upon behalf of which the persons acted, executed the instrument.

Witness my hand and official seal.

**OFFICIAL SEAL**
**MARIE BARCLAY**
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Comm. Expires Oct. 8, 2009

Marie Barclay
Notary Public for said State and County
Expires: 10/08/2009

## This page is part of your document - DO NOT DISCARD



# 20100567923



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

### 04/27/10 AT 08:00AM

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201004270190009

00002278355



002654611

**SEQ:**
**16**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

t29

E48443

04/27/2010

*20100567923*

Requested and Prepared by:
CR Title Services, Inc.

When Recorded Mail To:
**CR Title Services, Inc.**
**1000 TECHNOLOGY DRIVE MS 314**
**O'FALLON, MO 63368**

APN: 5510-001-004

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No: **T10-61222-CA**                    Order No: **4435319**

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

CITIMORTGAGE INC.

all beneficial interest under that certain Deed of Trust dated: **11-21-2006** executed by **CAROLYN H SEELEY.**, as Trustor(s), to **FIDELITY NATIONAL TITLE COMPANY**, as Trustee, recorded **11-30-2006**, as Instrument No. **06 2649645**, in Book , Page , , of Official Records, in the office of the County Recorder of **LOS ANGELES** County, **CALIFORNIA** together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Date: April 22, 2010

3

**TS:** T10-61222-CA

CITIMORTGAGE, INC., AS SUCCESSOR BY
MERGER TO ABN AMRO MORTGAGE
GROUP, INC.

Lisa Markham
Assistant Vice President

State of AZ }ss
County of PIMA }ss

On April 22, 2010 before me, Stephen D. Cochran     Notary Public, personally appeared Lisa Markham, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(seal)
Stephen D. Cochran Notary Public

OFFICIAL SEAL
STEPHEN D. COCHRAN
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. Jan. 18, 2014



This page is part of your document - DO NOT DISCARD

## 20100567924



Pages: 0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/27/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**LEADSHEET**



201004270190009

00002278356

002654611

**SEQ:
17**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t29

RECORDING REQUESTED BY:

FIRST AMERICAN TITLE INSURANCE CO.

AND WHEN RECORDED MAIL TO:

**CR TITLE SERVICES INC.**
**1000 TECHNOLOGY DRIVE MS 314**
**O'FALLON, MO 63368**

04/27/2010

*20100567924*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: T10-61222-CA                              Order No.: 4435319
## SUBSTITUTION OF TRUSTEE

   **WHEREAS, CAROLYN H SEELEY.** was the original Trustor, **FIDELITY NATIONAL TITLE COMPANY** was the original Trustee, and **ABN AMRO MORTGAGE GROUP, INC.** was the original Beneficiary under that certain Deed of Trust dated **11-21-2006** and recorded on **11-30-2006** as Instrument No. **06 2649645**, in book , page , of Official Records of **LOS ANGELES** County, CALIFORNIA; and

   **WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

   **WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

   **NOW, THEREFORE,** the undersigned hereby substitutes **CR Title Services, Inc.,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: April 22, 2010

8



T10-61222-CA

## Substitution of Trustee

CITIMORTGAGE INC.

By: _____
    Lisa Markham
    Assistant Vice President

State of AZ }
County of PIMA }

On April 22, 2010 before me, Stephen D. Cochran Notary Public, personally appeared Lisa Markham, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Arizona that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (seal)

Stephen D. Cochran Notary Public

OFFICIAL SEAL
STEPHEN D. COCHRAN
NOTARY PUBLIC-ARIZONA
PIMA COUNTY
My Comm. Exp. Jan. 18, 2014

**EXHIBIT C-"NOTICE OF DEFAULT"**

**EXHIBIT D-"NOTICE OF SALE"**



**This page is part of your document - DO NOT DISCARD**



## 20100567925

Pages: 0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/27/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**LEADSHEET**



201004270190009

00002278357



002654611

**SEQ:**
**18**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

t29

RECORDING REQUESTED BY:

04/27/2010

*20100567925*

WHEN RECORDED MAIL TO:
**CR TITLE SERVICES INC.**
**1000 TECHNOLOGY DRIVE MS 314**
**O'FALLON, MO 63368**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: **T10-61222-CA/ APN: 5510-001-004**
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR
PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,**
and you may have the legal right to bring your account in good standing by paying all of your past due
payments plus permitted costs and expenses within the time permitted by law for reinstatement of your
account, which is normally five business days prior to the date set for the sale of your property. No sale
date may be set until three months from the date this notice of default may be recorded (which date of
recordation appears on this notice).

This amount is **$39,167.90** as of **04-21-2010**, and will increase until your account becomes current.
While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay
taxes on the property, provide insurance on the property, or pay other obligations as required in the note
and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate
your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of
reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and
hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the
entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even
though full payment was demanded, but you must pay all amounts in default at the time payment is made.
However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the
notice of sale is posted (which may not be earlier than the three month period stated above) to, among
other things. (1) provide additional time in which to cure the default by transfer of the property or
otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor permits
a longer period, you have only the legal right to stop the sale of your property by paying the entire
amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to
stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**CITIMORTGAGE INC.**
**C/O CitiMortgage Inc.**
**ATTN: FORECLOSURE DEPARTMENT**

TS No.: **T10-61222-CA**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**1000 TECHNOLOGY DRIVE MS 314**
**O'FALLON, MO 63368**
**Phone: 877-576-0472**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **CR Title Services, Inc.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **11-21-2006**, executed by **CAROLYN H SEELEY.**, as Trustor, to secure certain obligations in favor of **ABN AMRO MORTGAGE GROUP, INC.**, as beneficiary, recorded **11-30-2006**, as Instrument No. **06 2649645**, in Book , Page , , of Official Records in the Office of the Recorder of **LOS ANGELES** County, California describing land therein as: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **1 NOTE(S) FOR THE ORIGINAL** sum of **$500,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**INSTALLMENT OF PRINCIPAL AND INTEREST PLUS IMPOUNDS AND / OR ADVANCES WHICH BECAME DUE ON 03/01/2009 PLUS LATE CHARGES, AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST, BALLOON PAYMENTS, PLUS IMPOUNDS AND/OR ADVANCES AND LATE CHARGES THAT BECOME PAYABLE.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**Dated: 04-22-2010**

**CR Title Services, Inc., AS AGENT FOR THE BENEFICIARY by FIRST AMERICAN TITLE INSURANCE CO., AS AUTHORIZED AGENT**

**BY:**

TODD BRACHTENBACH

Federal Law requires us to notify you that we are acting as a debt collector. If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

TIO-61222-CA

Declaration Re: Borrower Contact and Due Diligence Pursuant to CC §2923.5 and instructions to Trustee
Re: Notice of Default

Re:     **CAROLYN H SEELEY**
        **6231 DREXEL AVE**
        **LOS ANGELES, CA 90048**
        **CitiMortgage**
        **0654170182**

The undersigned beneficiary or their authorized agent for the beneficiary hereby represents and declares
as follows:

1. x On 06/03/2009 the beneficiary or their authorized agent contacted the borrower(s) to assess their
financial situation and to explore options to avoid foreclosure. During this contact the borrower(s) was
advised he or she has the right to schedule a follow-up meeting to occur within 14 days. Further,
the borrower(s) was provided the toll-free telephone number to find a HUD-certified housing
counseling agency.

2. n/a n/a No contact was made with the borrower despite the due diligence of beneficiary or their
authorized agent's pursuant to California Civil Code §2923.5(g), including (a) Mailing a first-class letter
to the borrower(s) which included a toll free number to contact a HUD-certified housing counseling
agency; (b) Attempting to contact the borrower(s) by telephone at the primary telephone number on file at
least three times at different hours and on different days or determined that the primary and secondary
phone numbers on file were disconnected; and (c) Having received no response from the borrower(s) for
14 days after the telephone contact efforts were complete, an additional letter was sent to the borrower(s)
via certified mail, with return receipt requested.

3. n/a The borrower has surrendered the secured property as evidenced by a letter confirming the
surrender or by delivery of the keys to the secured property to the beneficiary, their authorized agent or
the trustee.

4. n/a The Beneficiary or their authorized agent has evidence and reasonably believes that the borrower
has contracted with an organization, person, or entity whose primary business is advising people who
have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual
obligations to beneficiaries.

5. n/a The beneficiary or their authorized agent has confirmed that the borrower(s) filed for bankruptcy
and the proceedings have not been finalized to wit, there is no order on the court's docket closing or
dismissing the bankruptcy case.

6. n/a The provisions of California Civil Code §2923.5 do not apply because the loan is not a residential
mortgage loans originated between January 1, 2003 and December 31, 2007 secured by the borrower's
principal residence.

The undersigned instructs the trustee to proceed with non-judicial foreclosure proceedings and expressly
authorizes the trustee or their authorized agent to sign the notice of default containing the declaration re:
contact required pursuant to California Civil Code §2923.5.

Dated:  April 21, 2010

By:     Pam January

 

**This page is part of your document - DO NOT DISCARD**

## 20101036937

 

Pages: 0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/28/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201007280240012

00002725567



002804169

**SEQ:**
**05**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

t29

*2*

**FIRST AMERICAN TITLE INSURANCE COMPANY**

RECORDING REQUESTED BY
**CR TITLE SERVICES INC.**

AND WHEN RECORDED MAIL TO:
**CR TITLE SERVICES INC.**
**1000 TECHNOLOGY DRIVE MS 314**
**O'FALLON, MO 63368**


07/28/2010
*20101036937*

4430319

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**T.S. No. T10-61222-CA / APN: 5510-001-004**

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11-21-2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Pursuant to California Civil Code Section 2923.54 the undersigned, on behalf of the beneficiary, loan servicer, or authorized agent, declares as follows:

[ X ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed and
[ X ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55

Trustor: **CAROLYN H SEELEY.**
Duly Appointed Trustee: **CR Title Services, Inc.**
     **C/O PITE DUNCAN, 4375 JUTLAND DRIVE, SUITE 200, SAN DIEGO, CA 92117 877-576-0472**
Recorded **11-30-2006** as Instrument No. **06 2649645** in book , page  of Official Records in the office of the Recorder of **LOS ANGELES** County, California,
Date of Sale:**08-18-2010 at 10:30 AM**
Place of Sale:     **AT THE FRONT ENTRANCE TO THE POMONA SUPERIOR COURTS BUILDING, 350 W. MISSION BLVD., POMONA, CALIFORNIA**
Amount of unpaid balance and other charges: **$550,623.24**
Street Address or other common designation of real property:     **6231 DREXEL AVE**
     **LOS ANGELES, CA 90048**

**A.P.N.: 5510-001-004**

Legal Description: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale. The Trustee shall incur no liability for any good faith error in stating the proper amount of unpaid balances and charges.

5

3

For Sales Information please contact PRIORITY POSTING AND PUBLISHING at WWW.PRIORITYPOSTING.COM or (714) 573-1965

**REINSTATEMENT LINE: 877-576-0472**

Date: 07-28-2010

CR Title Services, Inc.
**1000 TECHNOLOGY DRIVE MS 314**
**O'FALLON, MO 63368**

**PENNY WHITE, TRUSTEE SPECIALIST**

**Federal Law requires us to notify you that we are acting as a debt collector. If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22          **EXHIBIT E-"RESCISSION NOTICE/ADVERSE CLAIM"**
23
24
25
26
27
28

PLAINTIFF'S ORIGINAL COMPLAINT FOR QUIET TITLE

# RECISSION OF SECURITY INSTRUMENT

## NON-NEGOTIABLE

## NUMBER: ROSSNNCS100001

### NOTICE TO AGENT IS NOTICE TO PRINCIPAL

### NOTICE TO PRINCIPAL IS NOTICE TO AGENT

This is Constructive Notice that the Security Instrument entered into by ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's and CAROLYN H SEELEY on November 30th, 2006 numbered 654170182 is hereby revoked, rescinded, terminated, and canceled in accordance with California Civil Code Section 1682, 1688,1689, 1700, 20 CFR 11 Sections 404.1905 and 12 CFR 226.23. Any and All debts, contracts, obligations, subsequent securities, credit due on account, bonds and registered or unregistered securities generated from this security agreement are hereby disputed in accordance with 15 USC 1692 (g). You have ten (10) days to rebut this notice and the attached affidavit of Carolyn-H: Seeley, on a point by point basis under oath (Notary Seal), or your silence will be deemed a waiver of all ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's rights to remedy and recourse in accordance with California Civil Code 1501 and 1505.

Further Affiant Sayeth Naught,

*Carolyn H Seely*, Without Recourse, in accordance with 28 USC 1746.

Carolyn-H: Seeley, Authorized Representative for CAROLYN H SEELEY

### NOTICE TO AGENT IS NOTICE TO PRINCIPAL

### NOTICE TO PRINCIPAL IS NOTICE TO AGENT

STATE OF: CALIFORNIA, COUNTY or JUDICIAL DISTRICT: LOS ANGELES *For Verification Purposes Only*

On this date the individual named above, in his/her stated capacity, personally appeared before me and acknowledged that this instrument was signed as a free and voluntary act and deed for the uses and purposes therein mentioned.

DATE: ___August 2, 2010___   By: ___Deanna Gerald_____ Notary Public

Seal:

My Commission Expires: ___March 21, 2013___



DEANNA GERALD
COMM. #1838654
Notary Public • California
Los Angeles County
Comm. Expires Mar 21, 2013

**AFFIDAVIT OF Carolyn-H: Seeley/NOTICE OF ADVERSE CLAIM**
**NON-NEGOTIABLE**
**NUMBER AACNCS10001**

(In accordance with Public Law 97-280, California Code of Civil Procedure 2015.5, California Commercial Code 8105, and Hebrews 6:16-20, King James 1611 Version)

**NOTICE TO AGENT IS NOTICE TO PRINCIPAL**
**NOTICE TO PRINCIPAL IS NOTICE TO AGENT**

I, Carolyn-H: Seeley am the Grantor, Consignor, Assignor, Drawer, Maker and Obligor, in a certain negotiable instrument (Deed of Trust) with account number: 65417018 2, for the Real Property with the following Legal Description;

SEE EXHIBIT "A"-LEGAL DESCRIPTION

On or around November 30, 2006, I entered into a Security Agreement with ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's which I possess a security interest in which equals and/or exceeds the amount of indebtedness listed on the face of the instrument. This Offer of Performance is made by the authority of and in accordance with California Commercial Code 10401,10508 and will serve as a Notice of Adverse Claim in accordance with California Commercial Code 8105 and a dispute of the debt and all claims to contract in accordance with 15 USC 1692(g). You have ten (10) days to rebut the claims made in this affidavit, under oath on a point by point basis, or your silence will be deemed as your agreement to the facts represented herein and you will lose all remedy and recourse in this matter in accordance with California Civil Code 1501 and 1505.

1.) The Deed of Trust is a negotiable instrument according to California Commercial Code 3104;

2.) I, Carolyn-H: Seeley am the Maker, Grantor, Drawer, and Transferor of the Deed of Trust Evidenced as document number 02 1117385 on the Public Deed Book of Los Angeles County, California, and ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's, its agent's, successor's, and assign's is the Drawee, Grantee, Acceptor, and Transferee in accordance with California Commercial Code 3103;

3.) The Deed of Trust is a Draft for Money and or Credit and a certificate of indebtedness as defined in California Commercial Code 3103 and considered "An Obligation or other Security of the United States" as defined in 18 USC Part One, Chap. One, Sect. 8;

4.) That Money, US Currency, and legal tender are defined by California Commercial Code 1201(24) and also defined by 18 USC Part One, Chap. One, Sect. 8, 31 USC Sections, 392, 3123, 5103, and 5118;

5.) ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's, its agent's, successor's, and assign's followed Generally Accepted Accounting Procedures in the creation of this credit/deposit account;

6.) ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's, its agent's, successor's, and assign's borrowed against the value of an unregistered Promissory Note of Carolyn-H: Seeley, acting as a commodities intermediary as defined as California Commercial Code 9102, created credit on account, and subsequent securities as a servicer of the alleged loan to Carolyn-H: Seeley and ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's is instructed by the express terms of the Deed of Trust evidenced as document number 02 1117385 in the Public Deed Book of Los Angeles County, California, and that the interest in the aforementioned negotiable instrument of Carolyn-H: Seeley can be conveyed to ABN AMROMORTGAGE GROUP INC, its agent's,

successor's, and assign's for the settlement and closure Mortgage/Deed of Trust number 654170182 in accordance with California Commercial Code 1204,5118, 9107, 9206(c), and 9309(8);

7.) ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's created "funds" out of thin air through a process called hypothecation, and fractionalization in the creation of the credit/deposit account as described in defined in the publication "Modern Money Mechanics" prepared by the Federal Reserve Bank Branch of Chicago, 6th Federal District of the District of Columbia, held by The United States, a Federal Corporation as defined in 28 USC Sect. 3003 and the Articles of Municipal Incorporation filed in Delaware in 1989;

8.) That Carolyn-H: Seeley's performance of this alleged obligation is not excused by ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's inaction to this affidavit, and that by your inaction, I am not entitled to all rights and benefits obtained as if both parties performed in accordance with California Civil Code Sections 1511(3) and 1512;

9.) That Carolyn-H: Seeley cannot modify or terminate the written contract entitled "Deed of Trust" because it does not reflect the intention of the Grantor, CAROLYN H SEELEY as long as it is done without prejudice to the rights of any third parties and in good faith for value in accordance with California Civil Code 3399;

10.) That any contractual restriction in said Mortgage/Deed of Trust is ineffective in Protecting any Security Interest held by ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's that will give rise to breach or claim in recoupment in accordance with California Civil Code 2889 and California Commercial Code 9406, 9407(d)(2) and 3305;

11.) That an intentional cancellation of an written contract(negotiable instrument) does not extinguish the obligation and favors the rights the cancelling party to the rights of all non consenting parties in accordance with California Civil Code 1700;

12.) ABN AMROMORTGAGE GROUP INC, its agent's, successor's, and assign's. is a Financial Institution as defined by the National Bank Act of 1864 codified in 12 USC Sect.343.

Your silence in this matter will again be deemed as acceptance of the facts represented herein, and any and all Security Instruments, Negotiable Instruments, Accounts, Liens, and Obligations pertaining to the above mentioned property will be considered terminated and settled under the authority of and in accordance with California Commercial Code 2206, 2209, 10508(a), 3202, 3502, 3603, 12 CFR Sect. 226, 15 USC 1601 et seq. and 20 CFR 111 Sect. 404.1905.

Further affiant sayeth naught.

By: ___Carolyn H Seely___ , Living Soul, Authorized Representative for
CAROLYN H SEELEY, Date: __8/02/2010__

**NOTICE TO AGENT IS NOTICE TO PRINCIPAL**
**NOTICE TO PRINCIPAL IS NOTICE TO AGENT**

STATE OF: CALIFORNIA, COUNTY or JUDICIAL DISTRICT: LOS ANGELES *For Verification Purposes Only*
On this date the individual named above, in his/her stated capacity, personally appeared before me and acknowledged that this instrument was signed as a free and voluntary act and deed for the uses and purposes therein mentioned.
DATE: __August 2, 2010__ By: __Deanna Gerald__ ___ Notary Public

Seal: ___ My Commission Expires: __March 21, 2013__

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ABN AMRO MORTGAGE GROUP INC
2600 W. BIG BEAVER ROAD
TROY, MICHIGAN
48084

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Gerald Nelson_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
_Gerald Nelson_

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7009 2820 0000 5433 3499

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1640

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Carlyn Seeley
c/o P.O Box 361343
LA, CA 90036

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CITI MORTGAGE INC
TECHNOLOGY DRIVE MS140
O'FALLON, MO
        63368

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7009 2820 0000 5433 3505

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

10 AUG 2010 PM 5 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

° Sender: Please print your name, address, and ZIP+4 in this box °

Carolyn Seeley
P.O. Box 361343
LA, Ca 90036

35

**SENDER: COMPLETE THIS SECTION**

- ☒ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☒ Print your name and address on the reverse so that we can return the card to you.
- ☒ Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

CR TITLE SERVICE INC.
1000 TECHNOLOGY DRIVE
MS 314
O'FALLON, MO
        63368

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7009 2820 0000 5433 3482

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Carolyn Seeley
c/o P.O. Box 36B43
La, Ca 90036.

35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT F-"CANCELED INSTRUMENTS"

PLAINTIFF'S ORIGINAL COMPLAINT FOR QUIET TITLE

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of _Los Angeles_                }

On _September 8, 2010_ before me, _Deanna Herald_,
    [Date]                        [Name of Notary Public and Title "Notary Public"]

personally appeared _Carolyn Seeley_
                             [Name(s) of signer(s)]
,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Deanna Herald_
Signature of Notary Public

DEANNA GERALD
COMM. 01838654
Notary Public · California
Los Angeles County
Comm. Expires Mar 21, 2013

(seal)

**************************OPTIONAL INFORMATION**************************
THE INFORMATION PROVIDED BELOW IS NOT REQUIRED BY LAW

**CHARACTER OR TITLE OF DOCUMENT** _Grant Deed_

**NUMBER OF PAGES** _2_          **DOCUMENT DATE** _11-25-1966_

**SIGNER(S) OF THE DOCUMENT OTHER THAN THOSE NAMED ABOVE:**

_____

_____

_____

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL THIS DEED AND,
UNLESS OTHERWISE SHOWN BELOW, MAIL TAX
STATEMENTS TO

Name  
Street Address  
City & State  
Zip

Carolyn H. Seeley  
6231 Drexel Avenue  
Los Angeles, CA 90048

Title Order No. 778718-44 Escrow No. 50339  
Old Republic Professional Escrow

## Grant Deed

This form furnished by United Title Company

SPACE ABOVE THIS LINE FOR RECORDER'S USE

The undersigned grantor(s) declare(s):  
Documentary transfer tax is $ 1,313.50 - City tax $1,292.50  
( XX ) computed on full value of property conveyed, or  
(  ) computed on full value less value of liens and encumbrances remaining at time of sale.  
(  ) unincorporated area ( X ) city of Los Angeles _____, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

ADINA DERWISH, an unmarried woman  
hereby GRANT(S) to

CAROLYN H. SEELEY, a single woman

The following described real property in the City of Los Angeles  
County of Los Angeles , State of California:

Lot 4 in Block 27 of Tract No. 7555, in the City of Los Angeles, County of
Los Angeles, State of California, as per map recorded in Book 88 Pages 79 to 84
inclusive of maps, in the office of the County Recorder of said County.

Dated _____ October 25, 1996

STATE OF CALIFORNIA  
COUNTY OF Los Angeles } SS.

On October 25, 1996 , before me, the
undersigned, a Notary Public in and for said State, personally appeared
Adina Derwish *

_____  
Adina Derwish

personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instru-
ment the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Signature _____

96 1786975

LINDA DRUMM  
Comm. #1092973  
NOTARY PUBLIC - CALIFORNIA  
LOS ANGELES COUNTY  
Comm. Exp. March 31, 2000

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE: IF NO PARTY SO SHOWN, MAIL AS DIRECTED ABOVE.

Same as above

| Name | Street Address | City and State |

UT-D22 (rev. 4/94)

FIDELITY-VAN NUYS

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE COMPANY

AND WHEN RECORDED MAIL TO:

Carolyn H. Seeley
6231 Drexel Avenue
Los Angeles, CA 90048

A.P.N.: 5510-001-004
Order No.: 19488731
Escrow No.: SEN202724-OM



11/30/06

20062649644

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

## ABANDONMENT OF HOMESTEAD

I/WE, the undersigned, hereby abandon the homestead previously declared in the HOMESTEAD DECLARATION executed by Carolyn H Seeley on December 2, 1996, and recorded on March 10, 1997 as Instrument No. 97-352385 Official records of the County Recorder of Los Angeles County, State of California.

The land referred to in the above referenced HOMESTEAD DECLARATION is commonly referred to as:

Street Address: 6231 Drexel Avenue, Los Angeles, CA 90048

And is more particularly described as follows:

Lot 4 of Block 27 of Tract No. 7555, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 88, Page(s) 79 to 84 inclusive of Maps, in the office of the County Recorder of said County.

_(Signature of Declarant)_
Carolyn H. Seeley

_(Signature of Declarant)_

Dated: November 21, 2006

STATE OF CALIFORNIA
COUNTY OF Los Angeles                    } ss

On November 21, 2006 before me
Ryan W. Dupuis
a Notary Public, personally appeared
Carolyn H. Seeley

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument

WITNESS my hand and official seal.

Signature _____
            Signature of Notary

RYAN W. DUPUIS
Commission # 1593674
Notary Public - California
Los Angeles County
My Comm. Expires Jul 8, 2009

(This Area for Notary Seal Only)

*/5*

LOAN #: 654170182

# INITIAL INTEREST℠ ADJUSTABLE RATE RIDER
## (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this        21ST        day of
NOVEMBER, 2006        and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the
same date given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest
Adjustable Rate Note (the "Note") to  ABN AMRO MORTGAGE GROUP, INC., A DELAWARE
CORPORATION

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at   6231 ORANGE AVE
LOS ANGELES, CA 90048

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of   6.500%.   The Note provides for
interest only payments until the first fully amortizing principal and interest payment due date
(the "First P&I Payment Due Date"), which is the    1ST    day of JANUARY, 2014.
The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Interest Change Dates
The interest rate I will pay may change on the    1ST    day of DECEMBER, 2013
and may change on that day every 12th month thereafter. Each date on which my
interest rate could change is called an "Interest Change Date."
### (B) The Index
Beginning with the first Interest Change Date, my interest rate will be based on an Index.
The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average
of interbank offered rates for one-year U.S. dollar-denominated deposits in the London
market, as published in **The Wall Street Journal.** The most recent Index figure available as
of the date 45 days before each Interest Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is
based upon comparable information. The Note Holder will give me notice of this choice.

Initials:   CAB

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable after Initial Period)-Single
Family-Freddie Mac UNIFORM INSTRUMENT Form 5137 7/05
© 2005 Online Documents, Inc.               **Page 1 of 4**               F5137RDU   F5137RLU  0510
                                                                11-21-2006 12:42

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of *Los Angeles*                    }

On *September 8, 2010*  before me,  *Deanna Gerald*,
    [Date]                                 [Name of Notary Public and Title "Notary Public"]

personally appeared         *Carolyn Seeley*
                                     [Name(s) of signer(s)]

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Deanna Gerald*
Signature of Notary Public

DEANNA GERALD
COMM. #1838654
Notary Public - California
Los Angeles County
Comm. Expires Mar 21, 2013

(seal)

***********************OPTIONAL INFORMATION***********************
THE INFORMATION PROVIDED BELOW IS NOT REQUIRED BY LAW

CHARACTER OR TITLE OF DOCUMENT  *Deed of Trust*

NUMBER OF PAGES___*1*___          DOCUMENT DATE *May 6, 2002*

SIGNER(S) OF THE DOCUMENT OTHER THAN THOSE NAMED ABOVE:

_____

_____

_____



**This page is part of your document - DO NOT DISCARD**



06 2649645

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
11/30/06 AT 08:00am**

**TITLE(S) :**



L E A D    S H E E T

**FEE**                                                           **D.T.T.**

FEE $ 55 LL 17

**CODE
20**        D.A. FEE Code 20          $  2.00

**CODE
19**

**CODE
9____**

**NOTIFICATION SENT $4**

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**





11/30/06

**20062649645**

FIDELITY-VAN NUYS

When recorded mail to:
ABN AMRO MORTGAGE GROUP, INC.
1201 EAST LINCOLN
MADISON HEIGHTS, MICHIGAN 48071-4171
ATTN:FINAL/TRAILING DOCUMENTS

5510-00-0163

19488751

LOAN #: 654170182

[Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section
16.
**(A) "Security Instrument"** means this document, which is dated **NOVEMBER 21, 2006,**        together with all
Riders to this document.
**(B) "Borrower"** is  **CAROLYN H SEELEY.**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  **ABN AMRO MORTGAGE GROUP, INC.**

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01
© 1999-2004 Online Documents, Inc.                                          **Page 1 of 12**

Initials:
CAUDEED   CAUDEDL 0402
**11-21-2006 12:42**

**LOAN #: 654170182**

Lender is a **CORPORATION**
**DELAWARE**.
**RD., TROY, MICHIGAN 48084.**

organized and existing under the laws of
Lender's address is **2600 W. BIG BEAVER**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **Fidelity National Title Company**

**(E) "Note"** means the promissory note signed by Borrower and dated **NOVEMBER 21, 2006.**     The Note states that Borrower owes Lender ****************************FIVE HUNDRED THOUSAND AND NO/100 ****************************************** Dollars (U.S.     **$500,000.00     )** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **DECEMBER 1, 2036.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [x] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] V.A. Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3005 1/01**
© 1999-2004 Online Documents, Inc          **Page 2 of 12**                Initials:
CAUDEDL   0402
**11-21-2006 12:42**

LOAN #: 654170182

Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following
described property located in the   **COUNTY**                                                     [Type of Recording Jurisdiction]
of   **LOS ANGELES**                                  [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.            *Exhibit "ONE"*

which currently has the address of  **6231 DREXEL AVE, LOS ANGELES,**

[Street] [City]

California     **90048**              ("Property Address"):
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances,
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant
and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants
and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay
when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges
due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the
Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received
by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that
any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following
forms, as selected by Lender: (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's
check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,
instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any
payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may
accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or
prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such
payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date,
then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes
payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either
apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal
balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the
future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument
or performing the covenants and agreements secured by this Security Instrument.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005 1/01          Initials:
© 1999-2004 Online Documents, Inc.                         **Page 3 of 12**                       CAUDEDL 0402
                                                                                                 11-21-2006 12:42

LOAN #: 654170182

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority. (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Initials: _____

CAUDEDL  0402
11-21-2006 12:42

LOAN #: 656170182

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3005 1/01
© 1999-2004 Online Documents, Inc.                                Page 5 of 12

Initials: QB

CAUDEDL 0402
11-21-2006 12:42

LOAN #: 654170182

promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**     Form 3005 1/01
© 1999-2004 Online Documents, Inc.                         Page 6 of 12

Initials:

CAUDEDL  0402
11-21-2006 12:42

LOAN #: 654170182

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an

Initials: _____

CAUDEDL 0402
11-21-2006 12:42

LOAN #: 656170182

opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials:
CAUDEDL  0402
11-21-2006 12:42

LOAN #: 654170182

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay

Initials: _CB_
CAUDEDL 0402
11-21-2006 12:42

LOAN #: 654170182

all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b ) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21, (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal

Initials:

CAUDEDL  0402
11-21-2006  12:42

LOAN #: 654170182

residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

Initials: ___

CAUDEDL 0402
11-21-2006 12:42

LOAN #: 654170182

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
CAROLYN H SEELEY

State of CALIFORNIA                    County of: Los Angeles

On November 21, 2006, before me, Ryan W. Dupuis, Notary Public (here insert name and title of the officer), personally appeared CAROLYN H SEELEY, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

RYAN W. DUPUIS
Commission # 1593874
Notary Public - California
Los Angeles County
My Comm. Expires Jul 6, 2009

*14*

## EXHIBIT "ONE"

Lot 4, in Block 27 of Tract No. 7555, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 88 Pages 79 to 84 inclusive of maps, in the office of the County Recorder of said county.

Assessor's Parcel No: 5510-001-004

06 2649645

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ }

On _Sept. 21, 2010_ before me, _Michael Park, Notary Public_
Date                                         Here Insert Name and Title of the Officer

personally appeared _Carolyn H. Seeley_
                                          Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    Signature of Notary Public

MICHAEL PARK
Commission # 1729070
Notary Public — California
Los Angeles County
My Comm. Expires Mar 4, 2011

Place Notary Seal Above

---------------- **OPTIONAL** ----------------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _Initial Interest Adjustable Rate Rider — As Settlor_

Document Date: _Signed: Sept. 21, 2010_     Number of Pages: _3_

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _Carolyn H. Seeley_
☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907  Reorder: Call Toll-Free 1-800-876-6827

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of _Los Angeles_                      }

On _September 8, 2010_ before me, _____ _Deanna Gerald_ _____,
 [Date]                                         [Name of Notary Public and Title "Notary Public"]

personally appeared _____ _Coralyn Seeley_ _____
                                [Name(s) of signer(s)]

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ _Deanna Gerald_ _____
      Signature of Notary Public

DEANNA GERALD
COMM. #1838654
Notary Public · California
Los Angeles County
Comm. Expires Mar 21, 2013

(seal)

**************************OPTIONAL INFORMATION**************************
THE INFORMATION PROVIDED BELOW IS NOT REQUIRED BY LAW

Settlement Statement
Uniform Residential Application
Adjustable Rate Note Rider
CHARACTER OR TITLE OF DOCUMENT Adjustable Rate Note

NUMBER OF PAGES _4_                    DOCUMENT DATE _11-21-2006_

SIGNER(S) OF THE DOCUMENT OTHER THAN THOSE NAMED ABOVE:

_____

_____

_____

*/5*

**LOAN #: 654170182**

# INITIAL INTEREST℠ ADJUSTABLE RATE RIDER
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)

THIS INITIAL INTEREST ADJUSTABLE RATE RIDER is made this **21ST** day of **NOVEMBER, 2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Initial Interest Adjustable Rate Note (the "Note") to **ABN AMRO MORTGAGE GROUP, INC., A DELAWARE CORPORATION**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at: **6231 DREXEL AVE LOS ANGELES, CA 90048**

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **6.500%**. The Note provides for interest only payments until the first fully amortizing principal and interest payment due date (the "First P&I Payment Due Date"), which is the **1ST** day of **JANUARY, 2014.**
The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Interest Change Dates
The interest rate I will pay may change on the **1ST** day of **DECEMBER, 2013** and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."
### (B) The Index
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in **The Wall Street Journal**. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

Initials: ___

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable after Initial Period)--Single Family--Freddie Mac UNIFORM INSTRUMENT Form 5137 7/05
© 2005 Online Documents, Inc          Page 1 of 4          F5137RDU   F5137RLU  0510
11-21-2006 12:42

*16*

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND ONE-FOURTH** percentage point(s) ( **2.250%** ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First P&I Payment Due Date, my monthly payment will be the amount sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. For payment adjustments occurring on or after the First P&I Payment Due Date, my monthly payment will be an amount sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than **11.500%** or less than **2.250%**. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **TWO** percentage point(s) ( **2.000%** ) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.500%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1. UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials: ___

MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable after Initial Period)—Single
Family—Freddie Mac UNIFORM INSTRUMENT Form 5137 7/05
© 2005 Online Documents, Inc.                     **Page 2 of 4**                     F5137RLU 0510
                                                                                    **11-21-2006 12:42**

*18*

**LOAN #: 654170182**

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____ (Seal)
**CAROLYN H SEELEY**

**MULTISTATE INITIAL INTEREST ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable after Initial Period)--Single Family--Freddie Mac UNIFORM INSTRUMENT Form 5137 7/05**

© 2005 Online Documents, Inc.           **Page 4 of 4**              F5137RLU 0510

11-21-2006 12:42



**L E A D   S H E E T**

**02 1117385**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

MAY   15   2002   AT 8 A.M.

SPACE ABOVE THIS LINE FOR RECORDERS USE

▲                                                          ▲

# TITLE(S)

**FEE**                                                    **D.T.T.**

 **FEE $67.00  M**     ̣21

**CODE 20**     D.A. FEE Code 20     $ 2.00

**CODE 19**

**CODE 9____**

Assessor's Identification Number (AIN)
To Be Completed By Examiner OR Title Company In Black Ink          Number of Parcels Shown

 ▲                                                    ▲ 

**THIS FORM IS NOT TO BE DUPLICATED**

22

## PREPAYMENT RIDER
## ADJUSTABLE RATE LOAN

Loan Number 0000614209

This Prepayment Rider is made this **6th** day of **May** **2002** and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**NEW CENTURY MORTGAGE CORPORATION**

(the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this rider shall prevail over and shall supersede any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

## 5. BORROWERS RIGHT TO PREPAY

I have the right to make prepayments of principal any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless: the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

If within **2** year(s) from the date of execution of the Security Instrument, I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12-month period exceeds **TWENTY PERCENT (20%)** of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of **6** months advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds **TWENTY PERCENT (20%)** of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Carolyn M Seeley_ _____
**CAROLYN H. SEELEY**

NCMC
Generic Prepayment Rider
RE 103 Revised (020800)

RE-103JId
JP 042202

09 111750F

1
2
3
4
5
6
7
8
9
10
11
12
13      **EXHIBIT G-"GRANT DEED TO TRUST"**
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S ORIGINAL COMPLAINT FOR QUIET TITLE

**This page is part of your document - DO NOT DISCARD**



## 20101066884



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/02/10 AT 03:07PM**

| | |
|---|---:|
| FEES: | 22.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 22.00 |



**L E A D S H E E T**



201008021920020

00002748782



002811534

**SEQ:**
**01**

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL DOCUMENT AND
TAX STATEMENT TO:

NAME  SEOUL BABY TRUST
STREET
ADDRESS  C/O: P.O. BOX 361343
CITY, STATE &
ZIP CODE  LOS ANGELES, CA 90048

08/02/2010

*20101066884*

TITLE ORDER NO            ESCROW NO            SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

# GRANT DEED

APN: 5510-001-004

The undersigned grantor(s) declare(s) ∅ This is a bona fide gift R&T 11911
DOCUMENTARY TRANSFER TAX $
☒ computed on full value of property conveyed, or
☐ computed on full value less liens and encumbrances remaining at time of sale.
☐ Unincorporated Area        City of  LOS ANGELES

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, I (We) CAROLYN H. SEELEY
A single woman

hereby remise, release and grant to  SEOUL BABY TRUST

the following described real property in the City of LOS ANGELES            ,County of  LOS ANGELES
State of California, with the following legal description:

SEE ATTACHMENT "A"-LEGAL DESCRIPTION

8/02/10
Date

_Carolyn H Suly_
CAROLYN H. SEELY

STATE OF  CALIFORNIA

COUNTY OF  LOS ANGELES

On August 2, 2010 ___ before me, Deanna Gerald (Notary)
(Date)                                      (Name and title of the officer)

personally appeared  Carolyn H. Seeley
(Name of person signing)                              , who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

_Deanna Gerald_
Signature of officer

DEANNA GERALD.
COMM. #1838654
Notary Public - California
Los Angeles County
Comm. Expires Mar 21, 2013

* There are various types of deed forms depending on each person's legal status. Before you use this form you many want to consult an
attorney if you have questions concerning which document form is appropriate for your transaction.

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of *Los Angeles*                    }

On *August 2, 2010*  before me, *Deanna Gerald (Notary)*                    ,
[Date]                                       [Name of Notary Public and Title "Notary Public"]

personally appeared  *Carolyn H. Seeley*                              
                                            [Name(s) of signer(s)]

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Deanna Gerald*
Signature of Notary Public

DEANNA GERALD.
COMM. #1838654
Notary Public · California
Los Angeles County
Comm. Expires Mar 21, 2013

(seal)

*************************OPTIONAL INFORMATION*************************
THE INFORMATION PROVIDED BELOW IS NOT REQUIRED BY LAW

CHARACTER OR TITLE OF DOCUMENT  *Grant Deed*

NUMBER OF PAGES_____          DOCUMENT DATE  *8-2-10*

SIGNER(S) OF THE DOCUMENT OTHER THAN THOSE NAMED ABOVE:

**EXHIBIT H-"TRUSTEE'S DEED AFTER SALE"**

46



**This page is part of your document - DO NOT DISCARD**



## 20101293850



**Pages: 0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/14/10 AT 03:39PM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 4,228.00 |
| OTHER: | 0.00 |
| PAID: | 4,252.00 |



**L E A D S H E E T**



201009141920026

00002963784



002885512

**SEQ:
01**

**DAR - Counter (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

E0MO

RECORDING REQUESTED BY:
**CR Title Services, Inc.**

AND WHEN RECORDED TO:
**OLYMPIC INVESTMENTS,INC.**
**11300 W. OLYMPIC BLVD.#860**
**LOS ANGELESCA90064**

**Forward Tax Statements to**
**the address given above**

09/14/2010

*20101293850*

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: **T10-61222-CA**
APN: **5510-001-004**

Order #: **4435319**
Investor #:

# TRUSTEE'S DEED UPON SALE

A.P.N.: **5510-001-004**
The Grantee Herein was not The Foreclosing Beneficiary.
The Amount of The Unpaid Debt was **$554,118.78**
The Amount Paid By The Grantee Was  **$755,000.00**
Said Property Is In The City of **LOS ANGELES**, County of **LOS ANGELES**

Transfer Tax:   (LA) 3,347.50

(89) 830.50

**CR Title Services, Inc.,** as Trustee, (whereas so designated in the Deed of Trust hereunder more
particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

## OLYMPIC INVESTMENTS,INC.

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest
conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the
county of **LOS ANGELES**, State of California, described as follows:

See Attached Legal Description.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by
**CAROLYN H SEELEY**, as Trustor, dated **11-21-2006** of the Official Records in the office of the
Recorder of **LOS ANGELES**, California under the authority and powers vested in the Trustee designated
in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust
pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on **11-30-2006**,
instrument number **06 2649645**, Book , Page  of Official records.  Trustee having complied with all
applicable statutory requirements of the State of California and performed all duties required by the Deed
of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a
Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person
entitled to notice in compliance with California Civil Code 2924b.

# TRUSTEE'S DEED UPON SALE

TS #: T10-61222-CA
Order #: 4435319

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **09-07-2010**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$755,000.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **CR Title Services, Inc.**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: **09-07-2010**

CR Title Services, Inc.

By: _____
Tamra Williams, Vice President

State of MO      }ss
County of SAINT CHARLES }

On September 10, 2010 before me, Elizabeth Cruz Notary Public, personally appear Tamra Williams, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (seal)
Elizabeth Cruz, Notary Public

ELIZA..'E!! CRUZ
Notary Public - Notary Seal
State of Missouri
St. Louis County
Commission #08637629
My Commission Expires 09/16/2012

TS #: **T10-61222-CA**
Order #: **4435319**

## Legal Description

LOT 4, IN BLOCK 27 OF TRACT NO. 7555, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE
OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 88 PAGES 79 TO 84 INCLUSIVE OF MAPS, IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT I-"POWER OF ATTORNEY"

 

**This page is part of your document - DO NOT DISCARD**



## 20101565787



**Pages: 0008**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/01/10 AT 01:06PM**

| | |
|---|---|
| FEES: | 36.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 36.00 |



**L E A D S H E E T**



201011010920004

00003214229



002970112

**SEQ:
01**

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E466563

RECORDING REQUESTED BY:

CAROLYN H SEELEY

*AND WHEN RECORDED MAIL TO*

[:Phillip-Andrew: El]

**ADDRESS:** [c/o: 944 Campbell Avenue]

**CITY:** [Chicago Heights]

**STATE:** [Illinois Republic]

**ZIPCODE:** near [60411]



_____**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

**POWER OF ATTORNEY --- GENERAL**      **[includes optional DURABLE POWER OF ATTORNEY]**

*In Accordance with California Probate Code Section 4401*

**KNOW ALL MEN BY THESE PRESENTS**: That I, **CAROLYN H SEELEY** the undersigned (jointly or severally, if more than one) hereby make, constitute and appoint

**[:Phillip-Andrew:El]**

My true and lawful Attorney in Fact for me and in my name, place and stead and for may use and benefit:

   (a)   To take exclusive charge, manage and conduct all of Principal's tax, business, and legal affairs, without limitation on the powers necessary to carry out this exclusive power of Attorney as Principal's Attorney in Fact outlined in this document;

   (b)   To endorse or otherwise sign Principal's signature, without liability, on all documents and instruments, of any type or nature, where Principal's signature is requested or required for the purpose of authenticating the writing in all commercial activity between Principal and other artificial entities;

   (c)   To receive money or property paid or delivered to me from any source;

   (d)   To deposit funds into, make withdrawals from, or sign checks or drafts against any account standing in \Principal's name individually or jointly in any bank or other depository; to cash coupons, bonds, or certificates of deposit; to endorse checks, notes, or other documents in Principal's name; to have access to, and to place items into or remove them from any safety deposit box standing in Principal's name individually or jointly; and otherwise to conduct bank transactions or business for Principal in Principal's name;

   (e)   To ask, demand, sue for, recover, collect and recover, collect and receive each and every sum of money, debt, account, legacy, Bequest interest, dividend, annuity and demand (which now is or hereafter shall became due, owing or payable) Belonging to or claimed by me, and to use and take any lawful means for the recovery *thereof by legal process or otherwise, and to execute and deliver a satisfaction or release therefore, together* with the right and power to compromise or compound any claim or demand;

1 of 6

(f) To pay my just debts and expenses, including reasonable expenses incurred by my Attorney in Fact, [:Phillip-Andrew:El], in exercising this exclusive power of attorney;

(g) To exercise any or all of the following powers as to real property, any interest therein and/or any building Thereon: To contract for, purchase, receive and take possession thereof and of evidence of title thereto; to lease the same for any term or purpose, including leases for business, residence, and oil and/or mineral development; to sell, exchange, grant or agreement;

(h) To give general and special proxies or exercise rights of conversion rights with respect to shares or securities; to deposit shares or securities with or transfer them to protective committees, or similar bodies; to join in any reorganization and pay assessments or subscriptions called for in connection with shares or securities;

(i) To sell, exchange, lease, give options, fund trusts, convey title by deed, and make contracts concerning real estate or other property for such considerations and on such terms as Agent may consider prudent;

(j) To improve or develop real estate; to construct, alter, or repair building structures and appurtenances to real estate; to settle boundary lines, easements, and other rights with respect to real estate; to plant, cultivate, harvest, and sell or otherwise dispose of crops and timber; to explore for , drill for, mine, develop, extract, remove, refine, process, ship, transport, utilize, convert, and sell minerals of all descriptions, oil, natural gas, and geothermal resources lying or beneath the surface of real estate and/or solar, wind, or hydroelectric energy and rights and title thereto, and do all things necessary or appropriate to good husbandry and stewardship of such property and resources;

(k) To purchase and maintain such polices of insurance against liability, fire, casualty, or other risks as Agent may seem prudent;

(l) To exercise any of all of the following powers as to all kinds of personal property and goods, wares and merchandise, chose's in action and other property in possession or in action: To contract for, buy, sell, exchange, transfer and in any legal manner deal in and with the same, and to mortgage, transfer in trust, or otherwise encumber or hypothecate the same to secure payment of a negotiable or non-negotiable note or performance of any obligation or agreement.

(m) To borrow money and to execute and deliver negotiable or non-negotiable notes therefore with or without security; and to loan money and receive negotiable or non-negotiable note or performance notes there for with such security as he/she shall deem proper;

(n) To create, amend, supplement and terminate any trust and to instruct and advise the trustee of any trust wherein I am or may be trustor or of beneficiary; to represent and vote stock, exercise stock rights, accept and deal with any dividend, distribution or bonus, join in any corporate financing, reorganization, merger, liquidation, consolidation or other action and the extension, compromise, conversion, adjustment, enforcement or foreclosure, singly or in conjunction or others of any corporate stock, bond, by or to me and to give or accept any property and/or money whether or not equal to or less in value than the amount owing in payment, settlement or satisfaction thereof;

(o)  To settle, compromise any and all claims, now existing or hereafter arising, against Principal and/or any Principal's collateral; and to execute, sign and indorse any and all claims, instruments, receipts, checks, drafts, money orders, electronic funds transfers (EFT), or warrants issued in payment for Principal's collateral.

**THIS FORM IS NOT VALID FOR HEALTH CARE DECISIONS.**

**Before you use this form, fill in all blanks, and make whatever changes are appropriate and necessary to your particular Transaction. Consult a lawyer if you doubt the form's fitness for your purpose and use. County makes no representation or warranty, express or implied, with respect to the merchantability or fitness of this form for an intended use or purpose.**

(p)  To transact business of any kind or class as my act and deed to sign, execute, acknowledge and deliver any deed, lease, assignment of lease, covenant, indenture, indemnity, agreement, mortgage, deed of trust, assignment of mortgage or of the beneficial interest under deed of trust, extension or renewal of any obligation, subordination or waiver of priority, hypothecation, bottomry, chatter-party, bill of lading, bill of sale, bill, bond, note, whether negotiable or non-negotiable, receipt, evidence of debt, full or partial release of satisfaction of mortgage, judgment and other debt, request for partial or full reconveyance of deed of trust and such other instruments in writing or any kind or class as may be necessary or proper in the premises;

(q)  To have the exclusive right to contract,; Agent may only obligate Principal in these matters and Principal forfeits the capacity to obligate itself with regard to the same. This grant of exclusive power is irrevocable during the lifetime of the agent;

(r)  To [Strike if not applicable.] This Power of Attorney shall become effective upon the incapacity of the principal [and shall remain effective for a period of _____ years after the disability or incapacity occur].

(s)  [Strike if not applicable.] This Power of Attorney shall not be effected by upon the incapacity of the principal [and shall remain effective for a period of _____ years after the disability or incapacity occurs].

(t)  If (r) and/or (s) are not stricken, the Notice of Persons Executing Durable Power of Attorney applies.

## NOTICE TO PERSON EXECUTING DURABLE POWER OF ATTORNEY

A durable power of attorney is an important legal document. By signing the durable power of attorney, you are authorizing another person to act for you, the principal. Before you sign this durable power of attorney, you should know these important facts:

Your agent (attorney-in-fact) has no duty to act unless you and your agent agree otherwise in writing. This document gives your agent the powers to manage, dispose of, sell, and convey your real and personal property, and to use your property as security if your agent borrows money on your behalf. This document does not give your agent the power to accept or receive any of your property, in truest of otherwise, as a gift, unless you specifically authorize the agent to accept or receive a gift.

Your agent will have the right to receive reasonable payment for services provided under this durable power of attorney unless you provide otherwise in this power of attorney. The powers you give your agent will continue to exist for your entire lifetime, unless you state that the durable power of attorney will last for a shorter period of time or unless you otherwise terminate the durable power of attorney. The powers you give your agent in this durable power of attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property. This durable power of attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. If it is signed by two witness either (1) the signing of the power of attorney or (2) the principal's signing or acknowledgment of his or her signature. A durable power of attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded. You should read this durable power of attorney care fully. When effective, this durable power of attorney will give your agent the right to deal with property that you now have or might acquire in the future. The durable power Of attorney is important to you. If you do not understand the durable power of attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

## NOTICE TO PERSON ACCEPTING THE APPOINTMENT AS ATTORNEY—IN—FACT

By acting or agreeing to act as the agent (attorney-in-fact) under this power of attorney you assume the Fiduciary and other legal responsibilities of an agent. These responsibilities include:

1.  The legal duty to act solely in the interest of the principal and to avoid conflicts of interest.
2.  The legal duty to keep the principal's property separate and distinct form any other property owned or controlled by you.

You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this power of attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property. If you transfer the principal's property to yourself without specific authorization in the power of attorney, you may be prosecuted for fraud and/or embezzlement. If the principal is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse under penal Code section 368. In addition to criminal prosecution, you may also be sued civil court.

## THIS FORM IS NOT VALID FOR HEALTH CARE DECISIONS.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the agent (attorney-in-fact) under the terms of this power of attorney.

Date: 11/1/2010

[:Phillip-Andrew: El], Attorney in Fact

5 of 6

GIVING AND GRANTING unto my said Attorney in Fact full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present, hereby ratifying all that my said Attorney in Fact shall lawfully do or cause to be done by virtue of these presents. The powers and authority hereby conferred upon my said Attorney in Fact or cause to be done by virtue of these presents. The power herein conferred upon him/her shall be exercised, and the whatever situate.

My said Attorney in Fact in Fact is empowered hereby to determine in his/her sole discretion the time when, purpose for and manner in which any power herein conferred upon him/her shall be exercised, and the conditions, provisions and covenants of any instrument of document which may be executed by him/her pursuant hereto; and in the acquisition or disposition of real or personal property, my said Attorney in Fact in Fact shall have exclusive power to fix the terms thereof for cash, credit and/or context so requires, man means living soul, the singular number includes the plural.

WITNESS my hand this ___1___ day of ' 11 ____ 2010

CAROLYN H SEELEY,

without the "United States"  in accordance with 28 USC 1746

state of California Republic      *For Verification Purposes Only*

county of Los Angeles

On _Nov. 1, 2010_, before me, _MICHAEL PARK_, Notary Public, whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in upon behalf of which the persons(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the law of the State of California Republic that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature _____, Notary Public   (Seal)

My Commission Expires _MARCH 4, 2011_



6 of 6

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _LOS ANGELES_ }

On _NOV. 1, 2010_ before me, _MICHAEL PARK, NOTARY PUBLIC_
Date                                        Here Insert Name and Title of the Officer

personally appeared _CAROLYN H. SEELEY_
                                    Name(s) of Signer(s)

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                        Signature of Notary Public

MICHAEL PARK
Commission # 1729070
Notary Public — California
Los Angeles County
My Comm. Expires Nov 4, 2011

Place Notary Seal Above

———————— **OPTIONAL** ————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _POWER OF ATTORNEY – GENERAL_

Document Date: _SIGNED: NOV 1, 2010_ Number of Pages: _6_

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _CAROLYN H. SEELEY_
☒ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT J-"COURT ORDER"**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
WEST DISTRICT, BEVERLY HILLS COURTHOUSE (19420    )
9355 BURTON WAY, BEVERLY HILLS, CA 90210
TELEPHONE: (310) 288-1308

OLYMPIC INVESTMENTS, INC.        vs.
SEELEY, CAROLYN                                            Case Number: 10U00867

CLERK'S NOTICE OF ENTRY OF JUDGMENT AND NOTICE RE EXHIBITS/DEPOSITIONS

   To the parties and their attorneys of record; You are hereby notified that
pursuant to section CCP 664.5, the attached copy of the judgment in the above
entitled case was entered on 10/29/2010 . Further, Exhibits/Depositions,
if any, will be destroyed at the end of 60 days from expiration of appeal time.

                                        JOHN A. CLARKE, Executive Officer/Clerk

                                        By PATRICIA BOULWARE , Deputy
                                           Clerk of the above named Court

   *Costs determined by Memorandum of Costs (1033 CCP et seq.)
_____
                        CLERK'S CERTIFICATE OF MAILING
I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify
that I am not a party to the cause herein, and that on this date I served the
Clerk's Notice of Entry upon each party or counsel
named below by depositing in the United States mail at the
courthouse in BEVERLY HILLS, CALIFORNIA,
one copy of the original filed/entered herein in a separate sealed envelope to each
address as shown below with the postage thereon fully prepaid.

-------------------------------------------------------------------------------------

     SEELEY, CAROLYN                      REBECCA HUFFORD-COHEN
                                          LAW OFFICES OF REBECCA HUFFORD-COHEN
     6231 DREXEL AVENUE                   433 NORTH CAMDEN DRIVE SUITE 600
     LOS ANGELES, CA 90048                BEVERLY HILLS, CA 90210

                                        JOHN A. CLARKE, Executive Officer/Clerk

Dated 10/29/2010                        BY PATRICIA BOULWARE , Deputy

JUDGMENT                                                                                    10U00867

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
WEST DISTRICT, BEVERLY HILLS COURTHOUSE (19420   )
9355 BURTON WAY, BEVERLY HILLS, CA 90210
Telephone: (310) 288-1308

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT JUDGMENT BE ENTERED AS FOLLOWS:

FOR:  OLYMPIC INVESTMENTS, INC.

AGAINST:  SEELEY, CAROLYN

RESTITUTION AND POSSESSION OF THE PREMISES LOCATED AT:
6231 DREXEL AVENUE,
LOS ANGELES, CA 90048

THIS JUDGMENT OF POSSESSION APPLIES TO ANY AND ALL UNNAMED OCCUPANTS OF THE PREMISES
PURSUANT TO C.C.P. 415.46.

This judgment conforms to the order of the court.

DATED: 10/29/2010                           RICHARD A. STONE
                                            JUDGE, SUPERIOR COURT

=================================================================================
FILED AND ENTERED ON: 10/29/2010               JOHN A. CLARKE
BY PATRICIA BOULWARE                           Executive Officer/Clerk
   DEPUTY CLERK

CIV 4                             JUDGMENT

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

~~SOULBABY TRUST~~
G. Phillips-Andrew: El; ~~fattorney~~ ~~the~~ ~~trust~~;
~~SEUL BABY TRUST~~

**DEFENDANTS** CITI MORTGAGE INC, CRTITLESERVICE INC, MORTGAGE ELECTRONIC REGISTRATION SYSTEM INC, OLYMPIC INVESTMENTS INC. AND ALL PARTIES CLAIMING INTEREST TO TITLE OF SUBJECT PROPERTY ~~AND~~ DOES I-X, inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

PLAINTIFF IN PROPIA PERSONA.

Attorneys (If Known)

OLYMPIC INVESTMENTS INC ~~SUREN COHEN~~. REBECCAH

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

---

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No    ☐ **MONEY DEMANDED IN COMPLAINT:** $_____

---

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 USC Sections, 1981, 1982, 1983, 1988(a), 18 USC 241, 242, 15 USC 1601 et. seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | IMMIGRATION | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ ~~Civil~~ Rights | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | | | FEDERAL TAX SUITS |
| ☒ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

---

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                     ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                     ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                     ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☒   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | Delaware, District of Columbia  Delaware, District of Columbia |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ~~ATTORNEY~~ (OR PRO PER): _All Rights Reserved_     Date 11/2/2010

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV10- 8299 CAS  (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]  Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ]  Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ]  Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

[:Phillip-Andrew: El;]
[c/o: 3725 Country Club Drive, Unite # 11]
[Long Beach, CA Republic near 90807]

# FOR OFFICE USE ONLY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| [:Phillip-Andrew: El;] | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV10-08299-CAS (PJWx) |
| v. | |
| CITIMORTGAGE INC CR TITLE SERVICES INC, (SEE ATTACHMENT) | SUMMONS |
| DEFENDANT(S). | |

TO:  DEFENDANT(S): _____

**FOR OFFICE USE ONLY**

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _____[:Phillip-Andrew: El;]_____, whose address is [c/o: 3725 Country Club Drive, Unite # 11, Long Beach, CA Republic near 90807]_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____NOV  1 6 2010____        By: ____ANDRES PEDRO____
                                         Deputy Clerk

                                         (Seal of the Court)
                                         1202

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# FOR OFFICE USE ONLY

[:Phillip-Andrew: El;]
[c/o: 3725 Country Club Drive, Unit #11]
[Long Beach, California Republic near [90807]]

Tel:  [(312) 961-4791]


Plaintiff in Propia Persona


**UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF
CALIFORNIA
LOS ANGELES (WESTERN DIVISION)**

FILED
CLERK, U.S. DISTRICT COURT
NOV 16 2010
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Fee Paid

LODGED
CLERK, U.S. DISTRICT COURT
NOV 2 - 2010
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

CV10 8299 - CAS (PJWx)

| | |
|---|---|
| [: Phillip-Andrew: El;] ~~redacted~~ ~~redacted~~ | CASE NO: |
| Plaintiff, | |
| V. | |
| CITIMORTGAGE INC CR TITLE SERVICES INC, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC, OLYMPIC INVESTMENTS INC, DOES 1 through X, inclusive. | TRIAL BY-JURY DEMANDED |
| Defendants | Date: |
| Defendants. | Time: |
| | Dept: |

**<u>COMPLAINT FOR QUIET TITLE</u>**

1

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

~~SOULBABY FEYST~~
G. Phillip-Andrew El; J, ~~Citizen/Beneficiary~~
~~Soul.baby-trust~~

**DEFENDANTS**

CITI MORTGAGE INC, CR TITLE SERVICE INC, MORTGAGE ELECTRONIC REGISTRATION SYSTEM INC, OLYMPIC INVESTMENTS INC. AND ALL PARTIES CLAIMING INTEREST TO TITLE OF SUBJECT PROPERTY AND ~~THE~~ DOES 1-X, Inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

PLAINTIFF IN PROPIA PERSONA.

Attorneys (If Known)

OLYMPIC INVESTMENTS INC LAUREN COHEN. REBECCAH

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 USC Sections, 1981, 1982, 1983, 1988 (a), 18 USC 241, 242, 15 USC 1601 et. seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ ~~440~~ Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☒ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   **CV10-08299-CAS (PJWx)**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐　Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☑　Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | Delaware, District of Columbia<br>Delaware, District of Columbia |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
　　**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

***** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _All rights reserved_　Date  11/2/2010

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |